| 6 | 377 |
| f11 | 176 |
| 25c | 42 |
| 25c | 45 |
| 6 | 377 |
| 19 | 247 |

## CLEMES v. FOX ET AL.

1. APPELLATE JURISDICTION OF SUPREME COURT AND COURT OF APPEALS.

The appellate jurisdiction of the supreme court and court of appeals upon appeal or writ of error is limited to those cases in which final judgment has been rendered.

2. APPELLATE JURISDICTION OF DISTRICT COURT.

A final judgment must have been rendered in the county court to warrant an appeal to the district court, except in cases where the decision was upon a question of law or fact relating to probate matters.

3. APPEAL—TRIAL DE NOVO.

Whenever the judgment of the county court is a final one, under that provision of the act permitting appeals to the district court, the latter court tries the case de novo, and renders such judgment as to it seems proper.

4. SAME.

Where an appeal is prosecuted under the act of 1891 to review a decision of the county court on questions of law or fact relating to probate matters, and in cases where no final judgment has been rendered by the lower tribunal, the district court is confined to a simple review of the action of the lower court, and may affirm or reverse it and remand the matter for further proceedings in conformity with that judgment.

5. RES JUDICATA.

The judgment of the district court, given upon an appeal under the act of 1891, from a judgment not final, is conclusive upon the county court; but if, afterwards, a final judgment be rendered by the county court in accordance with the directions it has received, and its ultimate judgment should come up for review, either in the district court or in the appellate tribunals, the antecedent judgment cannot be taken to be in the true sense res judicata, or to conclude the parties from raising on final hearing any proper question as to the legality or rightfulness of such final judgment.

6. FINAL JUDGMENT.

Under leave of the county court an administrator purchased a burial lot for the decedent and put the amount expended therefor in an account which he subsequently filed. On objections by creditors this item was stricken out and disallowed. *Held*, that the order is a final judgment between the administrator and the claimant; that an appeal therefrom to the district court was an appeal from a final judgment, and that the judgment of the district court on such appeal is reviewable in this court.

7. Administrator—Expenditures.

An administrator has the right to purchase a burial lot for the decedent, but due regard must be had to the situation of the estate, to the question of its solvency or insolvency, and to the circumstances attending the expenditure.

*Error to the District Court of Arapahoe County.*

Mr. R. H. Gilmore, for plaintiff in error.

Mr. Robert W. Bonynge, for defendants in error.

Bissell, J., delivered the opinion of the court.

While the matter involved in this suit is of slight moment either to the administrator or the creditors of the estate, who are the parties to the litigation, the matters to be considered are of considerable perplexity and much consequence to practitioners. It is the outgrowth of the administration of the estate of a decedent. The plaintiff in error Clemes was appointed administrator of the estate of Clark Lipe. We are not concerned with the circumstances of his appointment, or with anything except certain steps which he took in winding up the affairs and with the various orders of the county court which were made during the progress of the administration. The dates of the various orders will not always be given, since, our conclusions in no manner rest on the time of the adjudication. An application was made for a widow's allowance and the county court made an order fixing the amount, which apparently the administrator subsequently paid to the widow. On the administrator's application the court likewise made an order allowing the undertaker's bill in the fixed sum of $675.

The administrator likewise petitioned the court for authority to buy a cemetery lot. On this petition the court made an order granting the petition. What that petition was, its contents or its purport, is not set out in the present record. All we have is the order granting the application of the ad-

ministrator. The administrator at one period of the pro-
ceedings filed an account showing payment to the cemetery
company of $1,350; to Rogers, the undertaker, of $675.40,
and the widow's special allowance of $2,745.73. According
to the vouchers all these payments were made in September
and October, 1891. Subsequently, the administrator filed
what is called in the argument a final report, but which can-
not in any way be treated as such, since he did not proceed
according to the statute to procure a complete adjustment of
his accounts. Speaking generally the funds which came into
his hands amounted to a little over $5,400. Parties who will
be termed "The Fox Claimants" afterwards filed in the
county court a claim against the estate amounting to nearly
$5,000. It was allowed and became an established debt.
The estate was insolvent. There were not enough funds to
pay the claims filed and the widow's allowance. After these
various orders had been made, the Fox creditors filed objec-
tions to the allowances and applied to the court to set them
aside. Acting on this application the county court vacated
the order which allowed the cemetery bill, the undertaker's
claim, and the widow's allowance. These three items do not
appear to stand on the same basis. The entry respecting the
undertaker's bill and the widow's allowance was a specific
vacation of the orders which permitted the payment and the
matters apparently stood for final determination. From these
orders the undertaker and the widow prayed an appeal to the
district court. Neither of these appeals however was per-
fected, nor did the administrator take any action in the prem-
ises. Under these circumstances the matters stood in the
county court as pending on the application of the adminis-
trator and of the widow, in the one case for leave to pay the
undertaker's bill or to approve his voucher therefor, and in
the other for an allowance under the statute. Just what
action was taken with reference to the cemetery lot cannot
be gathered from the papers. All we know is this: In 1893,
the administrator filed a report in which these three items
again appeared as credits in his favor. Thereupon the court

made an order that the report be disallowed as to these three items. On what theory this particular kind of an order was entered we cannot determine. Evidently the matter of the undertaker's bill and the widow's allowance were open for ultimate consideration. How the matter of the cemetery lot was revived and whether the order made in September, 1893, was the only one concerning its allowance, or disallowance, we are not able to settle. At all events from this last order the administrator perfected an appeal to the district court where the case was heard. The district court took evidence and finally rendered a judgment wherein it is recited that the cause came on to be heard on the report asking for its approval, and the court found as a matter of fact that no appeal had been taken by anybody from the orders which the county court made with respect to the undertaker's bill and the widow's allowance. It therefore disallowed the charge in this report as to those two items. As to the cemetery lot, the court found the county court had no authority to make any order in the premises, but determined what would be the proper credit and allowed $240. In this particular the order of the county court was modified. A branch of this same controversy was recently decided in the supreme court at the April term, 1895, under the title of *Lipe v. Fox et al.*, 21 Colo. 140. A decision was rendered respecting the subject-matter of that litigation which was the widow's allowance. This decision will be again referred to.

The chief difficulty we have springs from the peculiar legislation regulating the winding up of the estates of decedents, and the statutes which provide for appeals from the county court in such and other cases. By section 499 of the General Statutes of 1883, and section 508 of the same statute as modified by the act of 1891, Session Laws of 1891, page 108, appeals from the county court are provided for and regulated. Under the first section appeals can be taken to the district court from all final judgments of the county court. A subsequent section gives the parties the right to a trial *de novo* when any such appeal has been regularly perfected.

The act of 1891 gives parties a right to a review of all deci-
sions of the county court on questions of law and fact relat-
ing to probate matters.   The code and the act of 1891 which
give appellate jurisdiction to the supreme court, and the court
of appeals, limit the right to an appeal or a writ of error to
those cases in which a final judgment shall have been ren-
dered.   The confusion comes from these three several pro-
.visions.   Where a party attempts to have a matter reviewed
in this or in the supreme court, he must be able to produce
a final judgment, as that term has been defined in the various
cases.   It is likewise true such a judgment must have been
rendered to warrant an appeal to the district court, unless
what he attempts to review has been done in some probate
matter.   If the county court has rendered any decision on a
matter of fact or a question of law in the probate of an estate,
the aggrieved. party may have that finding of fact or legal
determination reviewed in the district court, regardless of
the finality of the determination.   While this is true, it still
remains unquestionable that there can be no review of any
judgment of the district court entered on such an appeal, un-
less this judgment is final under the adjudications.   In other
words, the party may have a right of review in the district
court of some determinations by the county court which can-
not be brought to the appellate courts of the state for final
adjudication.   This is where the trouble comes.   Acting on
this hypothesis, the supreme court in the case above referred
to held the widow disentitled to a review of the order of the
county court setting aside the previous order granting her
an allowance.   The court held the matter analogous to the
setting aside of a verdict or judgment and the grant of a
new trial.   It was adjudged necessary to await an ultimate
determination of this question before the case could be brought
up.   Under the act of 1891, the widow could have appealed
from the order which set aside the allowance.   Manifestly
such a judgment of the district court would not, within the.
general understanding of the term, have been a final judg-
ment and therefore reviewable in the appellate tribunals.   On

the other hand, if an alleged creditor had presented a claim against the estate which the administrator had refused to allow, and on a hearing in the county court that court had adjudged his claim invalid and rendered judgment against him, as it might do under the probate system, the alleged creditor could have taken an appeal to the district court, and on a final adjudication there could have taken the controversy to one of the appellate tribunals. These two cases, the one an actual one, and the other conceived under the general practice, illustrate the difference in the character of the appeals which may be taken, and in the form and effect of the judgments which may be rendered, by the district court. There is another wide difference based on the statute regulating these matters. Wherever the judgment is a final one under that provision of the act permitting appeals in such cases, the district court tries the case *de novo* and renders such judgment as to it seems proper. Under the act of 1891, where an appeal is prosecuted under it and in cases where no final judgments have been rendered by the lower tribunal, the district court is confined to a simple review of the action of the lower court and may affirm or reverse it as the case may be, and send the matter back to the county court for further proceedings in conformity with that judgment. Since this is true, it must follow that if the appeal be taken from a judgment not final and be prosecuted under the acts of 1891, while the judgments of the district court are conclusive upon the county court and must control its subsequent action in the premises, yet, if afterwards a final judgment be rendered by the county court in accordance with the directions it has received, and its ultimate judgment shall come up for review either in the district court or in the appellate tribunals, the antecedent judgment cannot be taken to be in the true sense *res adjudicata* and therefore to conclude the parties from raising on a final hearing any proper question as to the legality or rightfulness of the final judgment which the county court may enter. Any other conclusion respecting the nature of those judgments would lead to endless confusion. When a

party takes an appeal to the district court as he may rightfully do from the interlocutory order of the county court, and that tribunal ultimately renders a judgment in accordance with that order as modified, reversed or affirmed, and the case comes up by appeal and it is demonstrated, as it might possibly be, that both courts were in error with respect to this matter, the subject should be open to review in the appellate tribunals. If, on the other hand, the appeal is taken from a final judgment which is affirmed in the district court, the matter must then come up for review subject to whatever limitations the general statutes regulating the right of appeals may contain.

Very strong support for this construction is found in the rule which prevails in most probate jurisdictions with reference to an account not final. Such accounts are not conclusive when the representative legatees or creditors seek a final settlement. Schouler's Executors & Administrators, sec. 526. It is almost universally true that periodical accounts may be passed on and allowed, but still remain open to subsequent consideration. This position is supported by the terms of the chapter on wills. Section 3620, General Statutes of 1883, provides that upon each and every settlement of the accounts of an administrator the court shall ascertain the whole amount that has come to his hands and then provide for the distribution of the funds and make dividends to the creditors. The difference between a final and a periodical account is likewise recognized in the sections which determine what the administrator must do if he desires to obtain a final discharge from his administration. It will be remembered there was no adjudication by the county court in September, 1893, with respect to two of the items in dispute. Those had been previously disposed of by orders which remained wholly unreversed and unmodified. By this we mean there was no such thing as a final judgment entered in respect to these matters. In obedience to the mandate of the court, the administrator filed a report and these items were stricken therefrom. It cannot be contended that this amounted to a final

judgment respecting those matters, or that the court at that time proceeded to adjudicate upon their validity or their sufficiency. The court evidently assumed that its antecedent action disentitled the administrator to put these items on the credit side of his account. All the orders of allowance had been set aside and these matters stood for ultimate determination. We do not deny to the court jurisdiction at that time, had it seen fit to act upon and consider the legitimacy of these credits, to render a final judgment respecting them, for or against the creditors or the administrator, as the case might be. It however undertook to do no such thing; it simply made an interlocutory order striking these items out of the account. The administrator took an appeal to the district court, as he might do under the act of 1891, and then that court exercised its jurisdiction in passing on these questions. Its only right as we have construed this statute was to review the action of the county court, and if that court possessed the power to strike the items from the account it could affirm its action. If, on the other hand, it was without the right to eliminate the items from the report, the district court could set aside the order which had been made. We take it the only right which the district court had under those circumstances was to take the record and the evidence and proceedings contained in it, and thereon either affirm or reverse the action of the court. This is practically all it did about these two items. We quite agree with the district court in its judgment that the matters of the undertaker's bill and the widow's allowance were not before it for consideration in the general sense, because nobody had taken an appeal to that court from the order setting them aside. Some of these matters are perhaps in a measure foreign to what is essential to our determination.

The judgment of the district court, in so far as it affirms the proceedings below, is not a final one, and therefore could not have been brought to this court on writ of error or by appeal. We have reached a conclusion which is somewhat analogous to the result reached by the supreme court in the

other branch of the litigation. The practice however seems to be very much at sea, and to be little understood by the profession. The acts have never been construed by either of the appellate courts. It has therefore seemed wise and necessary to consider the statutes in determining the right to maintain this writ. It likewise seemed essential to carefully distinguish between the classes of cases presented by final judgments and those which are presented by interlocutory orders which may be entered by the county court, and to clearly distinguish between the two. In the one the judgment might be *res adjudicata* and conclude the parties, and in the other no such legal result should attach to them. This is particularly true in the present case, because, at some time or another in the contest between the administrator and the Fox creditors, there must be an ultimate adjudication as to the amount of money which the administrator has which is properly applicable to the payment of the Fox debt. When that result shall be attained and a judgment rendered directing the administrator to pay over the money, it will undoubtedly be entered after a full consideration of all the various orders made by the county court in the progress of the administration and of the regularity, validity and legality of the acts of the administrator in making the several payments. When the matter shall then be brought up by writ of error or appeal, the whole matter will come up for consideration unaffected by the antecedent judgment of the district court.

While therefore we conclude that no writ of error would lie to review so much of the judgment of the district court as affirms the order to strike from the report the items involved in the antecedent discussion, had such been its only subject-matter, a wholly different question is of necessity involved in the consideration of the other part of the judgment which was rendered after a trial and hearing.

There is very much question in the books as to what constitutes a final judgment. The principal criterion by which that matter has always been resolved respects the conclusion of the controversy as between two parties to the record who

are the parties before the court. In the present case the county court made an order striking the credit of $1,350 expended for a burial lot from the report. With respect to the other two items, to wit: the undertaker's bill and the widow's allowance, they were not before the county court when the order of September 5, 1893, was made. These matters had been antecedently disposed of, first, by their allowance, and second, by an order setting aside the allowance and leaving the matter open for consideration and judgment. The order striking these two items therefore from the report of the administrator must be taken simply as an enforcement of what the court had antecedently done. When the appeal was taken to the district court, it simply brought up these two matters under the act of 1891. According to the disclosures of the record, the administrator should not have put those items into his statement, because they were pending in the court for consideration and had never been adjudged legitimate credits by that tribunal under any order which then stood. A very different conclusion must be reached respecting the other item. The administrator originally petitioned the county court for leave to purchase such a lot. The court granted the petition. Whether that order was broad enough to permit the expenditure of this amount of money we are unable to determine. At all events the lot was purchased and the amount was put into the account which the administrator filed. In September, 1893, this matter for the first time came before the county court for consideration. On objections filed by the creditors this item was stricken out and disallowed. The order must be taken to be a final judgment and conclusive between the administrator and the claimant. It seems to come according to its effect, although possibly not by reason of its exact and appropriate terms, entirely within a well considered class of cases which hold conclusions of this description, which in their nature and their substance are final, to be final judgments, although they do not come technically within the general definition. *Ex parte Spencer*, 95 North Carolina,

271; *Hemphill v. Collins*, 117 Ill. 396; *Trustees v. Greenough*, 105 U. S. 527; *Williams et al. v. Morgan et al.*, 111 U. S. 684.

There are many decisions of a similar nature, but these serve to illustrate the line on which the courts have proceeded. The question underlying all of the cases which consider the subject of the finality of the judgment is, did that which the court entered determine a matter disputed between the parties so that it is no longer open to contention? We must conclude the order of the county court disallowing this item did, as between the creditors and the administrator, directly decide the legitimacy of this expenditure and the legality of the charge. When the appeal was taken to the district court as to that portion of the order, it must be accepted as an appeal from a final judgment, which gave to the district court the right to try it *de novo* and imparted to whatever judgment it rendered the character of finality which warrants its review in this court.

Under these circumstances we must consider whether the judgment accorded with the law. The right to purchase a lot in which to bury a deceased person rests on very similar principles to those which control the administrator's right to pay the funeral charges and the expenses which are immediately attendant upon the death and burial. Schouler's Executors & Administrators, sec. 422.

While the administrator has the undoubted right to buy a place to bury the dead in, due regard must always be had to the situation of the estate, to the question of its solvency or insolvency, and to the circumstances attending the expenditure. The difficulty under which the administrator always labors is easily recognized. The stricken relatives are always clamorous for what they consider a fitting place in which to lay the dead, while the administrator is largely controlled by the financial considerations which must govern his action. The amount which he undertook originally to expend was manifestly ill conceived and unjustifiable. The estate was insolvent. The administrator undertook to expend nearly twenty-five per cent of all the money which came into his

hands in the purchase of a burial lot. This he had no right to do, and on a full consideration of the matter, and the hearing of evidence respecting it, the district court concluded $240 to be a legitimate sum for this purpose. We regard the allowance as ample and liberal, and are not inclined to disagree with the district court in the matter.

The judgment of the district court will accordingly be affirmed, with the express statement that this decision only extends to the one item of the cemetery lot, and is not an adjudication on the subject of the widow's allowance or the undertaker's bill. The judgment will accordingly be affirmed.

*Affirmed.*