### SMITH v. SPRAGUE et al.

No. 12824.

Circuit Court of Appeals, Eighth Circuit.

July 10, 1944.

648

Alfred W. Bowen, of Minneapolis, Minn. (Maurice A. Hessian, of Minneapolis, Minn., on the brief), for appellant.

D. C. Edwards, of Minneapolis, Minn., for appellee L. C. Sprague, receiver, etc.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from an order denying appellant's petition for allowance of compensation for services rendered by her deceased husband out of the receivership estate of the Minneapolis and St. Louis Railroad Company.

For some twenty years following 1923 the Minneapolis and St. Louis Railroad Company was in receivership, during a part of which time reorganization proceedings were also pending. During the entire time of the receivership the road was operated by the receiver so that it was an operating receivership. Arthur E. Smith, at and prior to the initiation of the receivership, had been and continued to be comptroller of the road until the time of his death, March 29, 1935, and the appellant, Kathleen M. Smith, is his widow and sole surviving heir. On February 1, 1932, the salary of Smith, together with the salaries of other supervisory officers, became subject to a ten per cent reduction pursuant to an agreement affecting the salaries of the officials of certain railroads throughout the United States. On May 29, 1933, pursuant to recommendation of the then receiver, Judge Booth, the administrative judge then in charge of said receivership, ordered that the supervisory employees of the road be subjected to an additional twenty per cent wage reduction from and after May 1, 1933. Judge Booth found that the financial condition of the road necessitated these reductions, and on consideration from time to time declined to restore the salaries.

Mr. William H. Bremner, who had been the receiver, departed this life December 12, 1934, and on January 18, 1937, the newly appointed receivers petitioned the court for instructions, reporting that of the supervisory employees who had sustained salary reductions, the following only remained subject to the thirty per cent pay cut: the co-receivers, general manager, comptroller, traffic manager, counsel for co-receivers, general solicitor, and general passenger agent. It was shown that there had been a large percentage of increase in gross revenues in 1936 over 1935, which increase was due in considerable part to the planning, efforts and enthusiasm of the officers, and it was urged that it would be in the interest of the trust estate to recognize these efforts by some restoration in their pay. In an order dated July 16, 1938, Judge Booth made restoration of the basic pay to the officers named in the petition but no salary restoration for the period of the pay cut was included.

When the twenty per cent reduction in the salaries of the supervisory officers was made, the court ordered in addition to the ten per cent cut affecting all employees, an additional ten per cent cut in the salaries of the non-contract employees. This additional ten per cent reduction remained in effect from about May 1, 1933, to May 1, 1934. The result was that the unorganized employees were subject to a deduction of wages to the extent of ten per cent which did not apply to the organized employees. On September 22, 1941, the unorganized group filed a petition seeking a restoration of such reduction. It was alleged and admitted that the employees so petitioning had remained in the employ of the receivership and faithfully discharged their duties in and about the operation and management of the road to the end that the receiver succeeded in re-establishing the business of the company and placed it on a sound financial basis, and that the improvement in the financial condition of the company was at least in part the result of the consent of said employees to said reduction in wages and to the faithful co-operation in the performance of their duties pursuant thereto. The receiver in response to this petition acknowledged the apparent discrimination between the organized and unorganized employees as to the ten per cent additional salary reduction and also called attention of the court to the supervisory employees, pointing out that they had not received any restoration of the thirty per cent reduction to which their salaries had been subjected, and asked the court to consider the entire field of salary reductions with the view of promoting harmony and good will among the various classes of employees. It was shown at that time that all the receiver's certificates issued during the receivership had been paid and that a substantial part of the improvement program recommended by the Railway Division of the Reconstruction Finance Corporation had been completed and that the receiver-

649

ship operation had produced net railway operating income of $9,003,043, net income available for interest $10,054,941, and receiver's net income of $6,886,357, besides additions and betterments to the property in excess of $900,000 in the preceding two and one-half years. It was contended by the receiver that the improved conditions were largely attributable to the loyalty, co-operation and efficient service rendered by the supervisory employees who had remained with the company since the period when the salary reductions were made effective.

On December 22, 1941 the court entered an order granting restoration to unorganized employees, limited to those in service at the time of the filing of the original petition. In connection with the entry of that order the court, among other things, said:

"The Court always has recognized the inequity of the situation. It had not the means at hand to provide a remedy. The officers and employees who have remained with the property have provided the means. That fact stands out in the evidence and in the records of the Court. It is they who have brought the property and affairs of the trust estate to a point where it can and should be taken out of the hands of the Court and returned to its owners. Without their continuing efforts, there would not now be at hand the opportunity or means to correct the situation complained of, however willing the Court might be to recognize the merit of their position. The right of any of these employees is not a legal right in any sense. It is an equitable right, and an important consideration in the Court's recognition of it is the factor of contribution of effort on the part of these officers and employees. It is also a controlling consideration in limiting the restoration to those employees and officers who were in the service of the receiver when this proceeding was commenced."

It is pointed out that the court in using the language "this proceeding" referred to the petition filed by the unorganized employees in September, 1941.

This was the state of the record when appellant filed her petition asking for restoration of salary reductions in the salary of Arthur E. Smith. It was the contention of appellant in the trial court, and that contention is urged upon us here, that it was inequitable to restore the salary reductions of the supervisory employees who were in the employ of the company in September, 1941, without according the same recognition to the supervisory employees who had died during the time intervening between the commencement of the salary reductions and the time of restoration, but who had continued in their employ until their death. When the reductions were made the road or its receiver could not afford to pay more than the reduced salaries. The supervisory employees were so advised and there was at the time of these reductions no promise, agreement or understanding that the employees affected would have any legal right to claim a restoration of the pay cut. At the time of Mr. Smith's death, March 29, 1935, there had been no material improvement in the financial condition of the road. Up to that time at least the court could not reasonably have ordered a restoration of salary cuts to the supervisory employees because there were no net earnings from which the payment might be made. The court found that the marked change in the financial condition of the road in 1941, as compared with the years 1933, 1934 and 1935, was due in part at least to the diligence, fidelity and efficient management which followed the appointment of the co-receivers on December 31, 1934. In denying the petition of appellant, the court, among other things, said:

"The salary restoration made by this Court in December, 1941, was not only directed to the restoration of salary reductions. It was also in recognition of faithful, loyal service, extra hours, and the commendable results attained by the receiver and his corps of officers during his régime."

At the time of the death of Mr. Smith the road was in bad financial condition; outstanding current bills exceeded cash on hand; receiver's certificates were outstanding in the amount of $1,185,000, and the road lacked credit. In reviewing the receivership operations into the year 1936, the Interstate Commerce Commission in Associated Railways Company, et al., etc., 228 I.C.C. 277, found that,

"The operation of the properties during the receivership prior to 1935 was uneconomical and inefficient, due to lack of supervision * * *."

The Commission, after observing the critical financial condition of the road prior to 1936, said, inter alia:

"Shortly after the coreceivers were appointed, a further program of economies was instituted that resulted in an annual saving of approximately $528,378 as of April 1, 1936. * * * Operations are now well supervised. * * * One important factor in building up the business of a railroad is cooperation of employees as potential salesmen. There was a period of several years when this force was almost dormant. When the coreceivers were appointed the morale of the employees was low. This has all been changed. There is perhaps no railroad in the Middle West that has a more loyal staff of employees. The railroad is now being well managed and its operation well supervised. * * * There has been a great improvement in operating efficiency, and many economies in operation have been effected since the coreceivers were appointed."

 There is no claim and no basis for a claim that Smith had any legal right to recover. Even a court of equity may not create rights having no existence at law and then take jurisdiction to pass upon and enforce them because the law affords no remedy. The trial court was familiar with the various phases of the operation of this receivership and was more familiar with the relative equities of the various classes of employees than this court can possibly be. This was a railroad operating receivership and the trial judge knew not only what proceedings had been had in court, but what had been done outside of court in the management, maintenance and operation of the property. In such circumstances much must be left to the discretion of the judge who was not only familiar with but had control of all matters connected with the operating receivership. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Tracy v. Spitzer-Rorick Trust & Savings Bank, 8 Cir., 12 F.2d 755; Weiss, et al. v. Haight & Freese Co., et al., 1 Cir., 165 F. 432; Trustee's System Co. v. Simon, et al., 3 Cir., 85 F.2d 389. Those employees who, notwithstanding the cut in their salaries, brought about by their continuing efforts the financial condition which made it possible to restore the salary cuts had some equitable claim to such allowance out of the fund which their efforts had brought into court. The court was warranted in finding that Mr. Smith's efforts did not contribute to the financial improvement which made it possible to make restoration of the salary cuts.

The order was therefore not arbitrary, but was based upon persuasive equitable considerations. The matter rested in the sound judicial discretion of the trial judge, and we are clear that that discretion has not been abused.

The order appealed from is therefore affirmed.