**BARNES v
FIFTH-THIRD UNION TRUST CO et**

Ohio Appeals, 1st Dist, Hamilton Co

No 5268. Decided Dec 20, 1937

374

Nippert & Nippert, Cincinnati, for appellee.

Taft, Stettinius and Hollister, Cincinnati, and John R. Bullock, Cincinnati, for appellant, The Fifth-Third Union Trust Co.

William R. Collins, Cincinnati, Havath E. Mau, Cincinnati, and R. H. French, Cincinnati, for appellant, The Fay & Egan Co.

**OPINION**

By MATTHEWS, J.

This is an appeal on questions of law from an order of the Common Pleas Court of Hamilton County, fixing $1250.00 as the reasonable value of services rendered by the attorneys for the plaintiff in this case, ordering that sum taxed as a part of the costs, payable to the attorneys "out of said fund."

The original action was instituted to enjoin the defendants from using a fund of $24,127.23, to purchase mortgage bonds. It is this fund to which reference was made in the order directing the payment of the attorneys' fees.

It appears from the record that the defendant J. A. Fay & Egan Company had executed a mortgage deed of trust to the defendant, The Fifth-Third Union Trust Company, to secure a bond issue of $438,000.00, of which bonds the plaintiff was the owner of $58,000.00. This mortgage created a lien upon several tracts of real estate in the city of Cincinnati. The first provision of the mortgage deed of trust, declaring its purpose is:

"1. 'The trustee shall release any land from the lien of this mortgage if the grantor shall desire to sell same as not being necessary for the proper conduct of said business, provided the trustee shall receive the proceeds of any sale thereof, the same to be invested as the grantor may elect either in further security for said bonds or in the purchase and retirement of bonds hereby secured or in the purchase of other land to be used in said business and to be made subject to the lien hereof'."

There is a provision in the bonds and mortgage giving the obligor the privilege of redeeming all or a part of them at 110% upon notice specifying the bond or bonds intended to be redeemed and the date fixed for payment. Interest would cease upon that date and the obligor was privileged to deposit the amount with the trustee and be relieved from further liability on such bonds. Upon request the trustee was obliged to endorse satisfaction pro tanto upon the mortgage.

The mortgagor bound itself to pay the coupons as they matured and to likewise pay all taxes upon the premises.

There were other provisions that upon default in payment of interest a bondholder could declare the principal of his bond to be due, and if any default continued for three months, upon written request of the owners of one-third of the bonds, could by request require the trustee to take possession and sell the mortgaged property. No such request, however, was ever made.

In accordance with the provisions of paragraph 1, heretofore quoted, the trustee released certain real estate not necessary for the proper conduct of the mortgagor's business, and it was sold and the proceeds amounting to $24,127.23 were deposited with the trustee together with the request of the mortgagor that it be used in the purchase of bonds for retirement, all in accordance with the provision heretofore quoted.

Thereupon, the trustee was proceeding

to advertise for offers when this action was filed to enjoin it from proceeding with the use of this fund for that purpose.

The prayer of the petition was for a temporary and permanent injunction.

The court granted a temporary restraining order, as prayed for on July 25th, 1936, upon the giving of bond in the sum of $500.00.

The plaintiff sought this relief on behalf of herself and all other bondholders similarly situated. The basis of her cause of action was that as the mortgagor was in a precarious financial condition, and in default in the payment of interest and taxes, the use of this money to buy bonds rather than to pay interest and taxes would materially reduce the security and cause irreparable damage.

Answers were filed by the mortgagor and trustee, setting forth the facts and asserting the right of the mortgagor to direct the use of this fund, and the duty of the trustee to follow the direction.

No further proceedings were taken in the case until February 24th, 1937, when the attorneys for the plaintiff filed an application for an award of attorney's fees.

On March 20th, 1937, leave was given the trustee in bankruptcy of J. A. Fay & Egan Company to file an application and motion, and leave was also given the trustee under the mortgage to file a motion. The application and motion were filed and from them it appears that on January 5th, 1937, the J. A. Fay & Egan Company filed its petition in bankruptcy in the United States District Court for the Southern District of Ohio, pursuant to the provisions of §77B of the bankruptcy act, as amended, praying that it be permitted to reorganize under favor of that section, and that the court on the same day approved the petition, appointed a temporary trustee and enjoined all persons "from beginning or prosecuting any suits of any kind against the debtor respecting its property." It further appears that on February 2nd, 1937, permanent trustees were appointed, that they were in possession of the assets and that said trustees were directed to assert the jurisdiction of the United States District Court over the assets of the bankrupt. The movants asked that further proceedings be suspended during the pendency of said bankruptcy proceedings.

On March 20th, 1937, the trustees filed an answer, re-asserting:

That the court had no jurisdiction to proceed on account of the pendency of the bankruptcy, and admitting that the pro-

visions of the mortgage deed of trust and the action taken thereunder by the mortgagor and trustee with reference to the purpose to purchase bonds with the proceeds of the real estate sold.

The trial court took the position that it had the jurisdiction to fix the amount of attorneys' fees subject to revision by the United States District Court, and, therefore, proceeded to hear the evidence on the subject of their value, and, after such hearing, made the order from which this appeal was taken.

It should be observed that the action out of which this controversy arose was one seeking an injunction and nothing else. It was not suggested by the petition that the court take possession in any of the subject-matter and administer it as a trust fund, unless the general prayer for all appropriate equitable relief should be so considered.

One of the defendants was a trustee, but it had not come into court seeking instructions as a trustee.

Has the court the power to award fees to attorneys for the plaintiff and make them a charge upon a fund not, strictly speaking, in custodia legis, and if so, can the value of such services be determined before final hearing upon the merits?

In **11 O. Jur., 55**, it is said:

"Of course, if no funds are brought into court no allowance for attorney's fees can be made."

This statement is supported by the citation of a single nisi prius decision. Whether it is correct depends upon the meaning to be given to the phrase "If no funds are brought into court."

That there is a trust fund involved in this litigation is clear. One of the defendants is a trustee, and it is holding the fund involved in that capacity. It seems equally clear that the action has brought this trust within control of the court with power to exercise such control to the extent that it in the exercise of sound discretion may deem necessary or advisable for the protection of those interested. Under such circumstances may a court of equity in a proper case award counsel fees payable out of the fund which it has power to control?

The subject of the power of a court exercising equitable jurisdiction to award attorney's fees has been elaborately discussed in two annotations in A.L.R. The first case is that of Hempstead v Meadville Theological School (286 Pa. 493, 134 Atl. 103), 49 A.L.R. 1145. In the syllabus it is said:

"Where many persons have a similar interest in a trust fund, and one of them, for the benefit of all, at his own cost and expense, brings suit for its preservation or administration, a court of equity in which the suit is brought will order plaintiff to be reimbursed his costs and expenses, including counsel fees, from the property of the trust, or order those benefited to contribute proportionately towards the expense.",

In support of the rule there announced, cases from many jurisdictions are cited, among which are **Bloomingdale v Stein, 42 Oh St 168; Mason v Alexander, 44 Oh St 318**, and others. At page 1161, the annotator says:

"In a broad sense, any fund against which an allowance for attorneys' services may be charged, on the theory that all interested in the fund have been benefited by the services, is a trust fund, and the allowance is often said to be made for services in the protection of a common trust fund. This subdivision is, however, limited to a consideration of cases allowing or disallowing attorneys' fees to the beneficiary of an express trust, on account of services rendered in his behalf in the protection of the corpus of the fund.

"The rule is stated to be that one jointly interested with others in a common trust fund, who, in good faith and at his own expense, maintains necessary litigation, or takes proper proceedings, to save it from waste and secure its proper application, or establish the fund, is entitled in equity to reimbursements of his costs, as between attorney and client, out of the fund protected."

Many cases are cited in support of the statement. And the rule is applicable to actions in suits by bondholders under a mortgage deed of trust. Id. 1176.

The other case is that of Wallace v Fiske, (80 Fed. (2d) 897), 107 A.L.R. 726. Quoting from the syllabus it held:

"The attorney of one of several remaindermen, by whose efforts in a suit brought by his client a decree of the Federal court was obtained adjudicating that upon the life tenant's death his client's remainder interest and those of the estates of two deceased remaindermen would be entitled to certain stock, including stock dividends, as against the claim of a party defendant who represented the life tenant's interest, is, upon final determination that the remainder interests of other remaindermen are protected by the decree, entitled to an assessment of counsel fees against their remainder interests notwithstanding that he has been compensated for his services by his own client, * * *."

See also: **Bedford v State ex, 123 Oh St 413.**

We think it clear that when a trust is brought within the cognizance of a court of equity it has power to control the trust through the trustee or otherwise, in order that all the relief—primary and incidental —growing out of the transaction brought under judicial review may be awarded.

We conclude that the nature of the case is such that under proper circumstances the court in the exercise of its equitable jurisdiction might award counsel fees chargeable as a part of the costs in the case and direct their payment out of a particular fund over which it had control, and that this fund was within its control unless superseded by the bankruptcy proceedings.

This brings us to the next question, and that is, whether the court should have awarded this fee before the determination of the final issue of whether the plaintiff was entitled to a permanent injunction. Until that time, so the argument runs, it cannot be determined whether the services were beneficial to the bondholders. It is true, of course, that if the ultimate issue were decided adversely to the plaintiff, she would not be entitled to have her counsel compensated at the expense of others. On the contrary, she would be liable to the defendants upon the injunction bond. It would seem to follow that until the merits of the claim made by the plaintiff had been adjudicated in her favor, could it be said that any benefit had resulted to others of the class which she assumed to represent. But it is said that while this may be the general rule, it has no application where, as in this case, the decision upon the final issue is either postponed or entirely prevented by the intervention of the superior jurisdiction in bankruptcy, of the United States District Court; and, further, that the temporary restraining order preserved this fund intact until such intervention, and that thereby the bondholders were benefited. That prevention of benefit cannot be accepted as the equivalent of benefits actually conferred so as to create an obligation to compensate is believed to be

a general rule. The equitable obligation to compensate arises solely by reason of the unjust enrichment resulting from the acceptance of the benefits. There being no benefit, the basis of the duty is lacking.

And the delay is equivocal in its nature until given definite character by the final judgment. If the plaintiff succeeds on final hearing, the restraining order or the lis pendens itself has preserved the property for disposition by the court in such a way as to confer benefits, but until then the delay was beneficial to no one. No legal benefit can result from the "law's delay." Delay in bringing the case to hearing on the merits cannot be said to be a purpose of the action, and no matter how long the delay that circumstance does not justify calling the litigation successful. And it must be successful to justify an award of attorney's fees. Hempstead v Meadville Theological School, supra, at 1159.

We, therefore, conclude that the order awarding compensation was premature.

We are further of the opinion that the pendency of the bankruptcy proceeding, brought to the attention of the trial court, suspended its jurisdiction to proceed and prevented a final hearing, so long as such proceedings remained pending. By the express terms of the bankruptcy act (11 U. S. C. A., §207) the institution of the bankruptcy proceeding drew to the United States District Court complete jurisdiction over all the assets and liabilities of the debtor and authorized that court to enjoin the commencement or continuance of any and all actions in all other courts; the jurisdiction of the court being expressly made the same as though an actual adjudication in bankruptcy had been entered.

It is true that that same section impliedly authorizes other courts to fix fees in case in which a receiver or trustee has been appointed by providing that in such cases the bankruptcy court shall be entitled to the possession of all the assets and "the judge shall make such orders as he may deem equitable for the protection of the obligations incurred by the receiver or prior trustee and for the payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing such receiver or prior trustee." That exception can have no application here as no receiver or trustee was appointed. Therefore, the usual rule would apply and the state court has no jurisdiction to fix fees. Gross v Irving Trust Co., 289 U. S. 342, in which it is said at page 345:

"The jurisdiction of the bankruptcy court being paramount, the power of the state court to fix the compensation of its receivers and the fees of their counsel necessarily came to an end with the supervening bankruptcy. When the bankruptcy court acquired jurisdiction, the sole power to fix such compensation and fees passed to that court."

It was suggested at the bar that the order from which the appeal was taken was beyond the jurisdiction of the trial court and also that it is not in any event a final order, and that as this court under the constitution is limited in its jurisdiction on appeal on questions of law to reviewing judgments, that, therefore, the appeal should be dismissed. Without the question being raised every court should before passing upon the merits of any controversy, first determine its own authority to hear and decide the question presented.

The Common Pleas Court is a court of general law and equity jurisdiction, and, therefore, this subject-matter of the right of counsel to be compensated out of a fund under its control comes within its jurisdiction, and it could exercise such jurisdiction unless something appeared in the particular case that prevented or suspended the exercise of the power. The fact that appeared in this case was the pendency of the bankruptcy proceeding. This called upon the court to determine the fact and then the legal issue of the extent to which its authority was limited by the pendency of the bankruptcy. It has been held many times that when the extent of the authority of a court depends upon the existence or non-existence of a fact or facts, the court has jurisdiction to hear evidence upon such question of fact and decide as to the existence or non-existence thereof and then the legal question as to the extent of its jurisdiction upon the facts so found. 1 Freeman on Judgments (5th ed.) §350. Of course, its decision is not conclusive upon these jurisdictional issues except when it is the court of final resort. The Common Pleas Court had jurisdiction to hear and determine this question of compensation, subject to review as to its finding upon the jurisdictional questions.

And this court is clothed with jurisdic-

tion to review if the trial court proceeded to exercise jurisdiction by en- tering an order having the characteristics of a judgment. It is queried whether the order appealed from has such characteristics. The language is positive and final that the compensation be paid to "said attorneys as part of the costs herein and that such allowance be paid out of said fund aforesaid." In language it was the final determination of this issue. So far as the trial court was concerned it fixed the rights of the parties on this issue in such a way that that court could not have disturbed them after the expiration of the term. Its jurisdiction over all the issues necessary to reach the decision embodied in the order terminating with the ending of the term at which the order was entered upon its journal. The fact that this court finds error in the decision of the jurisdictional issue or that the order may be nullified by the bankruptcy does not detract from the formality of the trial court's order. And this court is given jurisdiction by the constitution to review such order because they come within the definition of judgments.

For these reasons, the order appealed from is reversed and the cause remanded for further proceedings according to law.

ROSS, PJ, and HAMILTON, J, concur.