Rocca et al., Appellees, v. Wilke et al., Appellees; Ferguson et al., Appellants.

[Cite as Rocca v. Wilke (1977), 53 Ohio App. 2d 8.]

(Nos. C-76459, C-76460 and C-76838—Decided August 3, 1977.)

'    Messrs. Jacobs, Kleinman, Martin & Seibel, for appellees Helen L. Rocca, Ms. Elsie I. Nies, Ms. Gertrude Castner and Mr. Fred Brandt.

Mr. Simon L. Leis, prosecuting attorney, and Mr. Robert W. Worth, for appellees Mr. Wayne F. Wilke, Hamilton County Treasurer, and Mr. Joseph L. Decourcy, Hamilton County Auditor.

Mr. William J. Brown, attorney general, Mr. John C. Duffy, Jr., and Mr. Roy F. Martin, for appellants.

BLACK, J. The principal issues presented in this appeal relate to the authority and power of a Court of Common Pleas (1) to issue orders to the Board of Tax Appeals and the Auditor of the state of Ohio to be carried out throughout the state (concerning refunds of real estate taxes and penalties for late payments), and (2) to award attorney fees to the successful plaintiffs.

None of the assignments of error attack the "substance" of the order granting plaintiffs' motion for summary judgment: (a) that the five percent reduction in the 1971 real estate taxes ordered by Section 6 of Amended Substitute House Bill 475 (134 Ohio Laws 1485, 1629) and the ten percent reduction in the 1972 real estate taxes provided in R. C. 319.301 (134 Ohio Laws 1485, 1488) cannot be forfeited by late payment of taxes, and (b) that the ten percent penalty for late payment under R. C. 5719.-17 and 5719.18 must be based upon the net tax after these deductions. The claimed errors attack the form of action (declaratory judgment), the jurisdiction and authority of the Court of Common Pleas over the Board of Tax Appeals and the auditor of the state, and the awarding and apportionment of attorney fees.

The action was brought by Hamilton County taxpayers who were denied the five and ten percent rollbacks by reason of late payment and who were charged the ten per-cent penalty based upon the gross tax. The defendants were the treasurer and auditor of Hamilton County, the auditor of the state, and the Board of Tax Appeals.[1] By stipu-

---

[1]The Tax Commissioner of Ohio, although originally joined as a defendant, was dismissed from this cause prior to the final entry.

10

lation of the parties, this suit qualified and proceeded as a class action, with the court recognizing *two* classes of plaintiffs: those in Hamilton County and those throughout the state of Ohio. The court ordered, among other things, that an accounting be made of all taxes and penalties assessed and collected throughout the state in violation of the court's determination, and that all necessary steps be taken to insure that "reimbursement" is accomplished in all counties of the state. In its final order, the court found that the total amount not refunded to the taxpayer throughout the state was $170,785.85, and the court ordered the state auditor and the Board of Tax Appeals to verify these amounts and then to refund taxes to the taxpayers of each individual county by a specified procedure, and the auditor to file a later report and verification with respect to these refunds.[2]

[2]The specific provisions of the trial court's order to effect "reimbursement" were as follows:

"2. The Defendant, State Auditor, by virtue of his office as chief inspector and supervisor of public offices pursuant to Revised Code Section 117.01, and pursuant to his duty in Revised Code Section 117.09 of assuring each public office or agency is observing the laws pertaining thereto, and the Defendant, Board of Tax Appeals, pursuant to their duty of prescribing uniform rules and regulations of all officers relating to the levying and collecting of taxes in all counties in the State of Ohio, are hereby ordered individually and through their agents to verify the amounts described for the individual counties. After verification, the Defendants, individually and through their agents, shall establish the following procedure to refund the wrongfully collected and assessed taxes to the taxpayers of each individual county:

"1. The Defendants shall take all necessary steps including orders to the individual county auditors and treasurers pursuant to the authority described herein, to compile and complete an accurate list of all the owners of record as of the tax listing date, January 1, 1971, of all parcels of real estate to which the five (5%) percent roll back was not granted, and the ten (10%) percent penalty on gross taxes assessed. The Court further authorizes the Defendants to effectuate the orders to individual county auditors to maintain the originals of the above described list in their permanent records in lieu of the list being maintained in the Court records.

"2. The Defendants are also ordered individually and through their agents to effect orders to the auditors of each individual counties to mail forthwith the refunds to the owners described herein as provided in the list prepared. As to refunds less than One ($1.00) Dollar, the

The Board of Tax Appeals claims two errors:

I. "Error in overruling the motion of the Board of Tax Appeals to dismiss the complaint."

II. "Error in ordering the Board of Tax Appeals to effect reimbursement of the illegally assessed taxes in the manner prescribed in the final judgment entry."

Two errors were assigned by the auditor of the state:

III. "Error in ordering the auditor of state to effect reimbursement of these funds."

IV. "Error in disregarding the administrative interpretation of authority by the auditor of state."

Upon application, the trial court awarded attorney fees in the amount of $16,180 on the basis of the "common fund" doctrine, and further ordered that each of the two classes of plaintiffs pay one-half of the total sum. The treasurer and auditor of Hamilton County assigns two errors in their joint appeal:

V. "Error in awarding attorney fees."

---

Court does not require the mailing of these refunds, but will require the posting of a list of such available refunds in the various county courthouses and in the office of the various individual county auditors. Notification of this listing is to be published in local newspapers.

"3. The Court further finds that there are counties in the State of Ohio described on the attached accounting list, with the exception of Cuyahoga County, that they have indicated that there is no dollar amount to be refunded or credited for 1971. The Defendants, State Auditor and Board of Tax Appeals, individually and through their agents are hereby directed to verify that these counties have actually taken the proper action to reimburse the taxpayers by either:

"1. A credit in later years on the tax duplicates; or

"2. By way of an actual refund.

"If the Defendants determine that such is not correct, they shall take all steps as described above.

"4. The Court finds as to Cuyahoga County, the Defendants, State Auditor and Board of Tax Appeals are hereby directed individually and through their agents to verify refunds or credits of the 1970 (*sic*) Real Property Tax five (5%) percent refund and penalty roll back for the benefit of delinquent taxpayers as a part of the State Auditor's bi-annual audit of the Cuyahoga County Auditor and Treasurer's office.

"5. The State Auditor shall transmit to the Court his reports on the reimbursement date on which each county refunds their taxpayers the amounts set forth above and his verification in the other counties that refunds or credits have already been accomplished."

VI. "Error in the division thereof, whereby Hamilton County taxpayers pay one-half of the total."

The three appeals were consolidated by this court. The assignments of error will be considered in the order set forth above.

I.

We find no merit in the claims of the Board of Tax Appeals that plaintiffs had an adequate, available administrative remedy which was neither onerous nor burdensome, and that they failed to exhaust that remedy prior to bringing the declaratory judgment action. Civil Rule 57 provides, in pertinent part:

"The procedure for obtaining a declaratory judgment pursuant to Sections 2721.01 to 2721.15, inclusive, of the Revised Code, shall be in accordance with these rules. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases *where it is appropriate.*" (Emphasis added.)

In the third and fourth paragraphs of the syllabus of *Schaefer* v. *First National Bank of Findlay* (1938), 134 Ohio St. 511, the Supreme Court said:

"An action for a declaratory judgment may be alternative to other remedies in those cases in which the court, in the exercise of sound discretion, finds that the action is within the spirit of the Uniform Declaratory Judgments Act and a real controversy between adverse parties exists which is justiciable in character and speedy relief is necessary to the preservation of rights that may be otherwise impaired or lost."

"While a granting of a declaratory judgment is within the sound discretion of the court, the jurisdiction to grant such a judgment is not limited by the terms of the statutes to those cases in which no remedy is available either at law or in equity."

Declaratory judgment has been clearly established as an independent and alternative remedy.[a]

---

[a]The remedy has been available for the following: declaration of rights under a promissory note or mortgage (*Schaefer* v. *First National Bank of Findlay, supra*); the determination during probate administration of the validity of an inventory and of an election to take un-

The instant action, seeking a declaration as to tax refunds under legislative enactments, is within the spirit of the Uniform Declaratory Judgments Act; it is a real, existing controversy which is justiciable in character, and speedy relief is as necessary to the preservation of rights as it was in *Herrick* v. *Kosydar* (1975), 44 Ohio St. 2d 128, and in *Gannon* v. *Perk* (1976), 46 Ohio St. 2d 301.

Furthermore, the special statutory proceedings whereby the Board of Tax Appeals has authority to remit taxes and penalties found to be illegally assessed (R. C. 5715.39) are not exclusive. R. C. 2723.01 grants Courts of Common Pleas the authority to enjoin the illegal levy or collection of taxes and assessments, and to entertain actions to recover them when collected, without regard to the amount thereof, provided the action is brought within one year after the collection. Thus, there is express authority to contest through the courts the legality of forfeiting the rollback of taxes.' The statutory prohibition against injunctions staying or suspending any order of the Board of Tax Appeals (R. C. 5703.38) is a limitation on the right to

der the will (*Radaszewski* v. *Keating* [1943], 141 Ohio St. 489); declaration of the applicability of the Workmen's Compensation law to insurance salesmen (*American Life & Accident Insurance Co. of Kentucky* v. *Jones* [1949], 152 Ohio St. 287); the determination of the legality of layoffs ordered by the mayor of municipal workers covered by civil service (*Gannon* v. *Perk* [1976], 46 Ohio St. 2d 301); and the constitutionality of laws making state pensions and teacher retirement allowances subject to the state income tax (*Herrick* v. *Kosydar* [1975], 44 Ohio St. 2d 128). In questioning the constitutionality of a zoning regulation applicable to his specific tract of land, a landowner may ask for a declaraory judgment (*Driscoll* v. *Austintown Associates* [1975], 42 Ohio St. 2d 263), but because a constitutional question is involved, he must show that the alternative administrative remedies are not' equally as serviceable as a declaratory judgment action, or are unusually expensive or onerous, or are beyond the authority of the administrative agency. *Standard Oil Co.* v. *Warrensville Hts.* (1976), 48 Ohio App. 2d 1.

'R. C. 2723.01 has been used, for instance, to challenge an illegal assessment of sales taxes even though there was an alternative remedy under R. C. 5739.07. *Smith* v. *Dept. of Taxation* (1975), 46 Ohio App. 2d 132. The Supreme Court has stated that this remedy through the courts exists side by side with the remedy under R. C. 5715.19. *State, ex rel. Corron,* v. *Wisner* (1971), 25 Ohio St. 2d 160.

**14**

proceed through the Courts of Common Pleas under R. C. 2723.01 when the tax commissioner has already issued an order. *Torbet* v. *Kilgore* (1966), 6 Ohio St. 2d 42. In the instant case, however, no procedures had been initiated with the taxing authorities under R. C. Title 57.

We conclude that a declaratory judgment was appropriate in the instant case, and that the trial court did not err in overruling defendants' motions to dismiss. Accordingly, we overrule assignment of error I.

**II.**

The Court of Common Pleas of Hamilton County has no power or authority to issue orders requiring the Board of Tax Appeals to take action with respect to refunding taxes illegally assessed or collected throughout Ohio.[5] We reach this conclusion for a number of reasons.

First, under Section 4(B), Article IV, Constitution, Courts of Common Pleas have "such original jurisdiction over all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law." We do not find, and we have not been cited to, any provisions of the Revised Code that would have given the trial court the authority which it purported to exercise in issuing orders to the Board of Tax Appeals.

Second, as indicated in Part I, the Courts of Common Pleas and the Board of Tax Appeals are courts of concurrent jurisdiction with respect to the remission or refunding of taxes illegally assessed or collected. The

---

[5]Subsequent to the trial court's order for the "reimbursement" of funds, Amended Substitute House Bill 920 (1976 Ohio Laws 4-463) became effective (on October 11, 1976). One purpose of this bill was "to transfer the administrative functions of the board of tax appeals to the new department of tax equalization." Thus, the Ohio Board of Tax Appeals became a statutory creature of a more clearly defined judicial nature. The Commissioner of Tax Equalization now has the duties formerly imposed on the Board of Tax Appeals in R. C. 5703.-02(I), 5715.31 and 5715.39. The question of whether a Court of Common Pleas can issue orders to the Commissioner of Tax Equalization similar to those issued by the trial court in the instant case is not before us, but the Board of Tax Appeals cannot be reached by any such orders, whether heretofore and hereafter issued.

jurisdiction of Courts of Common Pleas is granted in R. C. 2723.01, and concurrently the jurisdiction of the Board of Tax Appeals is granted in R. C. 5703.02(I) and 5715.39. The statutes give the board the status of a court of original and appellate jurisdiction. It can determine its own jurisdiction, as the Supreme Court held in *National Tube Co.* v. *Ayres* (1949), 152 Ohio St. 255, and *State* v. *Carney* (1956), 166 Ohio St. 81, and its factual determinations concerning the weight to be given the evidence and the credibility of witnesses will not be disturbed upon appeal unless the board's exercise of its discretion affirmatively appears on the record to have been unreasonable or unlawful. *Cardinal Federal S. & L. Assn.* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 13.

Their concurrent jurisdiction and equal status is further illustrated by the manner in which appeals are taken to and from these two bodies. Appeals from the Board of Tax Appeals may be taken to the Supreme Court or to the Court of Appeals of the county in which the taxed property is situated or in which the taxpayer resides. R. C. 5717.04. Appeals from a determination of a county board of revision made under R. C. Chapter 5715, may be taken either to the Board of Tax Appeals or to that county's Court of Common Pleas. R. C. 5717.01 and 5717.05.

We conclude from the foregoing that Courts of Common Pleas and the Board of Tax Appeals have equal status in the determination of the legality of the assessment and collection of real estate taxes. Just as one Court of Common Pleas cannot issue orders to another Court of Common Pleas, a Court of Common Pleas may not issue orders to the Board of Tax Appeals.

Third, R. C. 5703.38 prohibits the issuance of an injunction which would suspend or stay any order, determination or direction of the Department of Taxation of Ohio, and this immunity is extended to the Board of Tax Appeals by R. C. 5703.04. Nor can the Court of Common Pleas issue orders requiring the Board of Tax Appeals to take affirmative action.

Assignment of error II is well taken.

## III.

The Court of Common Pleas here had no more authority to order the auditor of the state to cause county auditors to refund taxes than it had to order the Board of Tax Appeals to do the same.

Points one and three of the discussion in Part II are equally applicable here. We find no law vesting Courts of Common Pleas with original or appellate jurisdiction over the state auditor, and no authority by which they can suspend, stay or affirmatively require actions by the auditor, by a writ of mandamus or otherwise.

Third, the legislative enactments providing for the five and ten percent refunds did not give the state auditor any general supervisory power over county treasurers and county auditors. Those enactments simply require that the state auditor draw whatever vouchers and warrants may have been necessary to carry out the purposes and intents of the legislative orders. In addition, Amended House Bill 1193, effective September 30, 1974 (135 Ohio Laws, Part II, 1175) required that a final payment be made from state funds to the counties covering all unpaid reimbursements. Thus, all authority and power of the state auditor with respect to these rollbacks was terminated prior to the institution of the instant declaratory judgment action.

Finally, the state auditor is a member of the executive department of the state under Section 1, Article III of the Constitution, and his duties are limited to matters which affect state finances, not county finances. He is the chief accounting officer of the state and must keep a record of all monies paid into or out of the state treasury.[6]

---

[6]His transactions with county auditors and treasurers are limited to the auditing function. We interpret R. C. 115.40 through 115.42 to define the responsibilities of the auditor of the state in transactions with the county auditors and treasurers and to limit the auditor's authority to those funds and/or matters which affect state interests or finances. He determines the amount payable by a county treasurer to the state treasurer, or vice versa, as a result of each semi-annual settlement between the county auditor and the county treasurer. In that connection, he is directed to prepare and transmit to the county auditors the forms to be used by them in reporting to his office, to-

The auditor of the state has no authority to direct county auditors or treasurers as to the disposition of those funds within their exclusive jurisdictional responsibilites. County auditors and treasurers are separately elected and independently responsible public officials whose actions may be audited by the state auditor, but not directed or controlled by him.

We find assignment of error III to be well taken.

### IV.

In support of his position that his authority is limited to the protection and recovery of state funds, the auditor of the state assigns as error the disregarding of his administrative interpretation of his authority.

We find this assignment of error to be without merit because we do not find in the documents of record any evidence whatsoever of the auditor's interpretation of his statutory authority. When a statute is ambiguous, the court may take into consideration the administrative construction of the statute, under R. C. 1.49(F), but we have no demonstration of any such administrative construction before us pursuant to Civil Rule 56(C).

### V.

The first assignment of error asserted by the treasurer and auditor of Hamilton County claims that the trial court had no authority to award attorney fees to the taxpayers' counsel. The pertinent entry reads in part as follows:

"The Court further finds that there is a common fund which has been created as a result of the efforts of the Plaintiffs and their counsels (*sic*), the Court orders that the fees be paid out of the fund created."

The "American rule" is that the prevailing party may not recover attorney fees as part of the cost of litigation in the absence of statutory authorization. *Alyeska Pipeline Service Co.* v. *Wilderness Society* (1975), 421 U. S. 240; *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177; *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184.

gether with instructions on any subject affecting state finances and on the construction of any statute affecting state interests, the execution of which devolves in part ᴜn county auditors.

18

However, since 1881 there has been an exception to this general rule when the litigation has created or protected a common fund. In *Trustees* v. *Greenough* (1881), 105 U. S. 527, the Supreme Court held that the plaintiff was entitled to reimbursement for attorney fees paid for litigation extending over 11 years, the result of which was the protection of a mortgage bond trust fund against waste. The court stated that to refuse Greenough's claim would "not only be unjust to him but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage." *Id.*, at 532.

The Supreme Court of Ohio recognizes this exception to the general rule.[7]

In *Barnes* v. *Fifth-Third Union Trust Co.* (1937), 58 Ohio App. 27, we held that if the plaintiff prevailed in her suit to insure that trust funds were disbursed in accordance with the mortgage deed of trust, she should be entitled to recover counsel fees. However, the bankruptcy of the obligor company having intervened to prevent a final termination of the state suit, the award of fees was held to be premature. In the instant case, the Court of Common Pleas did not have a fund in hand, but neither did the court in *Barnes, supra*. In this case, as in that one, the court had jurisdiction over the custodian(s) of a fund in which other persons had an interest in common with plaintiff. As stated in Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 Harv. L. Rev. 1597 at 1618 (1974):

"* * * [A] court's reach or 'control,' though vital,

---

[7]*Bloomingdale* v. *Stein* (1884), 42 Ohio St. 168, held that attorney fees shall be paid out of the funds recovered by the litigation, which increased the amounts available for paying creditors' claims. The same result was reached in *Mason* v. *Alexander* (1886), 44 Ohio St. 318, wherein the court queried whether "other creditors, sitting by and observing counsel do work which inured as much to their benefit as to that of plaintiff, [could] be heard to say that in good faith and fairness they should not contribute to a reasonable recompense." *Smith* v. *Kroeger* (1941), 138 Ohio St. 508, awarded to plaintiff-stockholder for counsel fees a percentage of the total claims allowed by the court in a class action suit brought by plaintiff to have himself and others similarly situated treated as creditors of the corporation.

can take many forms. The control can be remote or indirect, can work through intermediaries who are obedient to instructions or who in the last resort can be coerced. Central, of course, is authority to adjudicate the rights and duties of interested parties. The tests of control must be expansive because of the variety and complexity of the tasks involved. For the declared object is to redistribute the costs of litigation in fair proportion to the benefits to strangers that it produces."

A careful review of the cases cited by the treasurer and auditor of Hamilton County discloses that none of them dealt with the common fund doctrine. *Sorin, supra,* involved a question of plaintiff's termination as superintendent of schools. *Boy, supra,* involved a writ of mandamus to make high school records available for inspection and copy. *Euclid* v. *Vogelin* (1950), 152 Ohio St. 538, held that the successful property owner in an appropriation proceeding cannot recover his attorney fees from the public authorities who unsuccessfully sought appropriation. *Grandle* v. *Rhodes* (1959), 169 Ohio St. 77, involved the protection of state funds held in the highway improvement fund, which cannot be considered a common fund because it was a fund held by public authorities for public purposes only, not comprised of monies belonging to or held for the benefit of specific individuals.

We conclude that (1) the Court of Common Pleas did not err in finding that there was a common fund within its control, and (2) it was proper to award the plaintiffs attorney fees out of such fund. However, the common fund consisted only of tax monies to be refunded or credited to owners of Hamilton County real estate; it did not and could not include refunds or credits with respect to real estate in any other county. The trial court based its award upon its finding that the total rollback reached by its order, mistakenly considered applicable across the state, totalled $170,785.85. Therefore, to the extent that the award of attorney fees was based upon rollbacks and/or penalties in any county other than Hamilton County, that order was in error. We find assignment of error V to be well taken in part and to be without merit in part.

We remand this case for the purpose of redetermining the reasonable value of attorney services rendered to those taxpayers of Hamilton County who are, under determinations made below, entitled to refunds or credits under the substantive decision of the trial court.

## VI.

The second error asserted by the treasurer and auditor of Hamilton County claims that the apportionment of attorney fees was error (that is, fifty percent to Hamilton County and fifty percent to the other counties affected by the trial court's orders). Since we have determined that the trial court had no authority or power to order tax refunds or credits in any county other than Hamilton County, we need not pass on this assignment of error.

In conclusion, we find assignment of error I to be without merit, assignment of error II to be well taken, assignment of error III to be well taken, assignment of error IV to be without merit, assignment of error V to be well taken in part, and assignment of error VI to be surplusage.

In order to position this case for such further proceedings as shall be necessary to resolve the remanded issues without reversing or modifying those issues which have been decided but neither appealed nor found to be in error, we remand the cause to the Court of Common Pleas of Hamilton County with instructions (1) to dismiss the Board of Tax Appeals and the auditor of the state as defendants, with their costs (not including attorney fees), and to vacate all orders previously issued against them and (2) to proceed with the refunding or crediting of five percent of the 1971 real estate taxes and ten percent of the 1972 real estate taxes in Hamilton County pursuant to the determinations heretofore made by the trial court as to the amounts thereof and the taxpayers entitled thereto, and (3) to redetermine the reasonable value of attorney fees for services in connection with the aggregate amount of such refunds and credits in and for Hamilton County.

*Judgment accordingly.*

SHANNON, P. J., and BETTMAN, J., concur.