AKRON-CANTON CHAPTER, AMERICAN SUBCONTRACTORS ASSOCIATION, ET AL., APPELLEES, *v.* OHIO DEPARTMENT OF ADMINISTRATIVE SERVICES ET AL., APPELLANTS.

(No. 11309—Decided May 30, 1984.)

*Timothy J. Ochsenhirt* and *Jeffrey J. Casto,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Jeffrey J. Jurca,* for appellants Dept. of Adm. Services and Ohio State Architect.

*Marvin A. Shapiro,* for appellants Univ. of Akron and Univ. of Akron Bd. of Trustees.

GEORGE, J. The plaintiffs-appellees include the Akron-Canton Chapter, American Subcontractors Association; Builders Exchange of Akron & Vicinity, Inc.; Associate General Contractors of America, Inc.; Ohio Building Chapter, Akron Division; Ruhlin Company; John P. Novatny Electric Co.; Bassak Brothers, Inc.; and James A. Dougherty. After commencement of the action Larry Parker was permitted to intervene as a plaintiff. The defendants initially included the Ohio Department of Administrative Services (DAS); the Office of the State Architect (Architect); the University of Akron (University); the Board of Trustees of the University of Akron (Trustees); Gibbons-Grable Co.; Siegferth, Inc.; City Mechanical Contractors, Inc.; Medina Electric Co.;

Fire Protection Industries; and the state of Ohio. The state of Ohio was voluntarily dismissed on April 6, 1983, and only DAS, Architect, University, and Trustees remained as defendants-appellants.

This action was instituted to enjoin construction of an office addition to the University's new physical education complex. The legislation authorizing monies for its construction was Am. Sub. H.B. No. 522. The appellees contested the validity of the contracts for the office addition, contending they were not awarded through the competitive bidding process (R.C. Chapter 153) and they were, therefore, void. The trial court granted a temporary restraining order on April 7, 1983. This order enjoined further payments to the named contractors until such time as a final hearing was held. On April 28, 1983, an amended complaint was filed requesting an accounting and the payment of monies due the named contractors be paid into a fund under the control of the court.

On May 9, 1983, the trial court entered a judgment dismissing the action with prejudice on the basis of an agreement between the parties. The agreement called for a deduct change order, letting the work out for competitive bidding, and dismissing the claim for attorney fees and costs against the named contractors. However, the appellees' claim for attorney fees and costs was reserved for later adjudication as between the appellees and the remaining appellants, DAS, Architect, University, and Trustees.

A stipulation, briefs, testimony and oral arguments were presented to the trial court on attorney fees and costs. The parties agreed that the question of the propriety of the filing of this action and the qualification of the appellees as representative taxpayers would not be raised. However, the appellees are, for the most part, organizations, companies and associations which appear to have

interests in public contracts beyond that of the average taxpayer.

The trial court issued findings of fact and conclusions of law. On August 3, 1983, the trial court granted appellees $12,229.25 for attorney fees and $3,391.45 for expenses. It is from this award that the appellants bring this appeal.

This court concludes that the appellees are not entitled to an award of attorney fees and expenses for the following reasons: (1) there is no specific statutory authorization for such an award; (2) no common fund was created or preserved; and (3) there was no finding of bad faith, which would justify such an award.

### Assignment of Error

"The trial court erred in ordering the University of Akron and Board of Trustees, University of Akron to pay costs and attorney's fees of the plaintiffs-appellees."

The state of Ohio was voluntarily dismissed as one of the named defendants prior to the trial court's adjudication and this appeal. However, this action is in essence prosecuted against the state of Ohio. The appellants, DAS, Architect, University, and Trustees, are no more than alter egos of the state of Ohio. The appellants are not autonomous and are not political subdivisions which might otherwise individually be amenable to this litigation. *McElhiney* v. *Univ. of Akron Personnel Dept.* (Dec. 30, 1981), Summit App. No. 10343, unreported.

The trial court held that the settlement reached between the parties was tantamount to a successful judgment for the appellees. Next, it awarded attorney fees and costs to the appellees. That award was based upon the trial court's following conclusions: first, that (Am. Sub. H.B. No. 552 and) R.C. 154.01(K) specifically authorized such expenses (specific statutory authorization is fre-

quently referred to as the "American Rule," *Grandle* v. *Rhodes* [1959], 169 Ohio St. 77 [8 O.O.2d 40]; and *Alyeska Pipeline Service Co.* v. *Wilderness Society* [1975], 421 U.S. 240); and second, that there was a preservation of a fund from which attorney fees and costs could be awarded.

Section 11 of Am. Sub. H.B. No. 552 (effective November 24, 1981) was the legislation appropriating the funds for the additional work on the physical education complex. It provided:

"All items set forth in the section are hereby appropriated out of any moneys in the state treasury to the credit of the Higher Education Improvement Fund created by division (F) of section 154.21 of the Revised Code, and not otherwise appropriated for higher education facilities. The following amounts shall be used to pay the cost of capital facilities as defined in section 154.01 of the Revised Code. * * *"

The trial court found that the appellees' legal fees and costs were authorized by R.C. 154.01(K) which provides in part:

" 'Costs of capital facilities' means the costs of acquiring, constructing, reconstructing, rehabilitating, remodeling, renovating, enlarging, improving, equipping, * * * including the cost of clearance and preparation of the site and of any land to be used in connection with capital facilities, * * * cost of engineering and architectural services, designs, plans, specifications, surveys, and estimates of cost, *legal fees,* fees and expenses of trustees, depositories, and paying agents for the obligations, cost of issuance of the obligations and financing charges and fees and expenses of financial advisers and consultants in connection therewith, * * * and all other expenses necessary or *incident to planning* or determining feasibility or practicability with respect to capital facilities, and such other expenses as may be necessary or incident to the *ac-*

quisition, construction, reconstruction, rehabilitation, remodeling, renovation, enlargement, improvement, equipment, and furnishing of capital facilities, the financing thereof and the placing of the same in use and operation, including any one, part of, or combination of such classes of costs and expenses." (Emphasis added.)

A close reading of the language used in context suggests that the term "legal fees" is meant to include legal expenses incurred incidental to the planning and actual construction phases of a capital facility. It does not include attorney fees incurred in a successful taxpayer's action. *Third Natl. Bank* v. *Impac Limited, Inc.* (1977), 432 U.S. 312.

If the legislature intended to include attorney fees and costs of a taxpayer's suit as a cost of capital facilities under R.C. 154.01(K), it would have clearly expressed this intention as it has done in various other legislation. See R.C. 163.21(B), 309.13, 733.61, 1313.51 and 50 Ohio Jurisprudence 2d (1961) 139, Statutes, Section 169 *et seq.* Therefore, R.C. 154.01(K) does not specifically authorize legal fees and costs to a successful taxpayer in a taxpayer's suit.

The appellees next argued, and the trial court agreed, that attorney fees were properly awarded according to the common fund exception to the "American Rule." This exception simply gives the trial court discretion to award attorney fees where the action results in the creation or the preservation of a fund for the benefit of all taxpayers. 52 Ohio Jurisprudence 2d (1962) 49, Taxpayers' Actions, Section 33; and, see, *Rocca* v. *Wilke* (1977), 53 Ohio App. 2d 8 [7 O.O.3d 12].

The appellants contend that no such common fund exists from which attorney fees may be awarded. The appellees argue that the common fund in this case is that savings, approximately $200,000, realized as a result of the parties' agreement to let the contracts for

competitive bidding. A "common fund" was not created or preserved where the funds involved were paid into the state treasury, were specifically appropriated for a particular purpose, and were held by public authorities for a public purpose not for the benefit of specific individuals. The $200,000 referred to here falls within the *Grandle* reasoning. *Grandle* v. *Rhodes, supra.* In *State, ex rel. Yontz,* v. *West* (1939), 135 Ohio St. 589 [14 O.O. 527], the successful taxpayer was awarded attorney fees out of funds which were to be collected as a result of his successful action. However, the fund created there consisted only of taxes collected. Such fees and costs would be awarded from this fund before they had reached the state treasury. In *Rocca* v. *Wilke, supra,* the taxpayer was successful in his action to compel tax refunds for a certain class of taxpayers. There, the court found that a common fund had been created from those tax monies to be refunded to the class of taxpayers involved.

The funds to be used for construction of the University's physical education complex had been appropriated from the state treasury for a specific purpose, *i.e.,* construction. Thus, the very nature of the alleged fund involved here is that which does not constitute a common fund. See *Grandle* v. *Rhodes, supra.* No common fund was in fact created or preserved from which attorney fees could have been awarded.

The trial court further found that an award of attorney fees and costs was proper because the appellees' action benefited the state and all taxpayers. However, the Supreme Court has held that although a public benefit is conferred by the appellees' successful action, an award of attorney fees will not be proper unless there also exists statutory authorization for awarding such fees. *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184, 185 [75 O.O.2d 228]. Thus, the trial court im-

properly awarded fees based upon the existence of a public benefit because, as stated previously, no statutory authorization for such fees exists.

Finally, the appellees argue that the appellants, by not letting the contracts out for competitive bidding, acted in bad faith, thus justifying an award of attorney fees. However, the trial court made no finding of bad faith or other oppressive acts on the part of the appellants, nor does this court find any support for such a finding in the record. *G.S.T.* v. *Avon Lake* (1978), 59 Ohio App. 2d 84, 89 [13 O.O.3d 142]. Therefore, the appellants' assignment of error is well-taken.

The trial court improperly awarded attorney fees and costs to the appellees. For the reasons set out above, this court reverses the judgment of the trial court and grants judgment to the appellants.

*Judgment reversed.*

BAIRD, P.J., and QUILLIN, J., concur.