## TRUSTEES *v.* GREENOUGH. ·

1. An appeal lies from a decree in equity for costs when they are directed to be paid, not by a particular party, but out of a fund in the hands, or under the control, of the court.
2. A decree made by a Circuit Court of the United States, directing that the complainant be paid his costs and expenses out of a fund in court, — the fund, in the mean time, remaining in the court in course of administration, — is *pro tanto* a final decree from which, if their amount be sufficient, an appeal will lie.
3. A trust estate must bear the necessary expenses of its administration.
4. One jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportionate contributions from those who receive the benefit of the litigation.
5. Where bonds issued by a corporation are secured by a trust fund which the trustee is wasting or misapplying, or which he refuses or neglects to apply to the payment of them, a holder of a portion of them who, in good faith, files a bill to secure a due application of the fund, and succeeds in bringing it under the control of the court for the common benefit of the bond-holders, is entitled to be paid from the fund before its distribution his costs, counsel fees, and necessary expenses of the litigation, that is to say, his costs as between solicitor and client. A claim, however, for his private expenses, such as travelling fares and hotel bills, or for his own time or personal services, cannot be allowed.
6. The practice of allowing to trustees, complainants, and receivers, and their counsel, large and extravagant counse. fees and commissions payable out of trust funds under the control of the court, commented on and disapproved.

APPEAL from the Circuit Court of the United States for the Northern District of Florida. ' ·

The facts are stated in the opinion of the court.

The case was argued by *Mr. Charles W. Jones* for the appellants, and by *Mr. Jefferson Chandler*, with whom was *Mr. C. D. Willard*, for the appellee.

MR. JUSTICE BRADLEY delivered the opinion of the court. ·
The question in this case is one of costs, expenses, and allowances awarded to the complainant below out of a trust fund under the control of the court. Ordinarily a decree will not be reviewed by this court on a question of costs merely in a suit in equity, although the court has entire control of the matter of costs, as well as the merits, when it has possession of

the cause on appeal from the final decree. But it was held by Lord Cottenham, in *Angell* v. *Davis* (4 Myl. & Craig, 360), that when the case is not one of personal costs, in which the court has ordered one party to pay them, but a case in which the court has directed them to be paid out of a particular fund, an appeal lies on the part of those interested in the fund. Lord Cottenham, indeed, suggested other cases in which an appeal might lie from a decree for costs, as where the costs are part of the specific relief prayed; and where the whole of the facts distinctly appear upon the face of the proceedings themselves, so that it is not necessary, in determining the question, to enter into any investigation of the merits. But these suggestions have not met with subsequent approval; and in the case of *Taylor* v. *Dowlen* (Law Rep. 4 Ch. App. 697), the court declared that they were not disposed to extend the case of *Angell* v. *Davis*; and dismissed an appeal brought by parties ordered to pay costs, which they claimed should be payable out of a fund.

But these discussions in the English courts arose under a system in which appeals from interlocutory orders are allowed. We can only entertain an appeal from a final decree; and supposing the objection to the appeal on the ground of its being from a decree for costs only is untenable, as we think it is, then arises another question, whether the orders appealed from amount to a final decree.

The principal suit was commenced in 1870, by a bill filed by Francis Vose, a large holder of bonds of the Florida Railroad Company, on behalf of himself and the other bondholders, against Harrison Reed and others, trustees of the Internal Improvement Fund of Florida, and against the former members of the same board, and against the board itself as a corporation, and sundry other corporations alleged to be in complicity with them. That fund consisted of ten or eleven million acres of lands belonging to the State, including certain proceeds of the sale of some of them, and was pledged for the payment of the interest accruing on the bonds and instalments of the sinking fund for meeting the principal, which were largely in arrear. The charge of the bill is to the effect that the trustees were wasting and destroying the fund by selling at nominal

prices the lands by the hundred thousand and even million acres, and failed and refused to provide for the payment of interest or sinking fund on the bonds. The bill prayed that the fraudulent conveyances be set aside, and the trustees enjoined from selling more lands, and that a receiver be appointed to take care of the fund.

The litigation was carried on with great vigor and at much expense, and in fact a large amount of the trust fund was secured and saved; the management of the fund was taken out of the hands of the trustees; agents were appointed by the court to make sales of the land, and made a large number of sales; a considerable amount of money was realized, and dividends have been made amongst the bondholders, most of whom came in and took the benefit of the litigation. Vose, the complainant, bore the whole burden of this litigation, and advanced most of the expenses which were necessary for the purpose of rendering it effective and successful. In 1875 he filed a petition, setting forth these advances and the efforts made by him, and prayed an allowance out of the fund for his expenses and services. In December, 1876, an order was made by the court referring it to a master to ascertain: 1. What and by whom the necessary expenditures have been incurred in bringing the moneys already received into court. 2. What necessary expenditures have been made, and by whom, in protecting the landed and sinking fund from which this money has been and will be realized. 3. What personal services have been rendered, and by whom, in said work, and the value thereof. 4. What amount of same have been charged to Francis Vose by the receiver, instead of being paid out of the common fund in his hands.

Vose presented his account and vouchers before the master, and testimony was taken on the subject. In 1877 the master made a report, in which, amongst other things, he stated as follows: —

"*First*, After consideration of the proofs as submitted to me, I find and report that the moneys which have already been received, whether upon account of the internal improvement fund or of the sinking fund, have been brought into court at the instance and the suit and by the sole efforts of

Francis Vose, the petitioner, through himself, his solicitors and his agents, and by the instrumentality more directly and especially of his proceeding in equity against the Trustees of the Internal Improvement Fund *et al.*, as they appear in the records which are made evidence in this case."

The master further reported a statement of expenditures made by Vose in the cause, and declared that they were necessary expenditures, being for fees of solicitors and counsel, costs of court, and sundry small incidental items for copying records and the like, the whole amounting to $34,192.62. He also stated and allowed sundry fees paid in maintaining other suits in New York, and on appeal to this court, attorneys' fees for resisting fraudulent coupons, and expenses paid to attorneys and agents to investigate fraudulent grants of the trust lands, amounting in all to $19,745.68. He also reported in favor of an allowance to Vose for his personal services and expenditures, as follows : —

"I further find and report that peculiar and great personal services have been rendered by the petitioner, Francis Vose, in the work of protecting the internal improvement and the sinking funds ; those services extending over a period of more than eleven years. By the instrumentality of the suits already mentioned as having been instituted by him, by the agencies he employed and sustained, and by his own vigilance and personal efforts he has saved from spoliation and subjected to the decrees of this court a vast domain of over ten millions of acres of land ; and has brought into this court large sums of money, which, from time to time, have been distributed by its orders.

"I consider and report that the charge embraced in his itemized account, and numbered forty-two (42), for $25,000 principal, and $9,625 interest, is reasonable and just.

"I also find that the charge in his itemized account, numbered forty-one (41), for personal expenditures of $15,003.35, is reasonable and just. Total $40,003.35."

The first of these items consisted of an allowance of $2,500 a year for ten years of personal services ; the second was for railroad fares and hotel bills paid by the complainant.

The proceedings before the master were opposed ; but, on a hearing upon the report and the evidence submitted therewith,

the court confirmed it to the extent of $27,835.34, allowing generally the fees of the officers of the court, and those of the attorneys and solicitors employed in the cause, including charges as between attorney and client; at the same time disallowing certain fees paid to advisory counsel and other items not directly connected with the suit, and referring the remainder of the report for further evidence and hearing. In December, 1879, after additional evidence had been taken, a final order was made, allowing sundry expenses for looking after and reclaiming the trust lands, and also allowing for the personal expenses and services of Vose embraced in the two items before referred to; the total amount allowed being $60,131.96.

'The appeal to this court is taken from these orders of the court below; and it is contended that they were illegal, because Vose was not before the court in the character of a trustee, and therefore not entitled to reimbursement of his expenses beyond taxable costs; and because the allowances were not lawful if he had been such trustee. The objections to the orders are not expressed in this precise form; but this is the substance of them.

The first question, however, is whether these orders do or do not amount to a final decree, upon which an appeal lies to this court. They are certainly a final determination of the particular matter arising upon the complainant's petition for allowances, and direct the payment of money out of the fund in the hands of the receiver. Though incidental to the cause, the inquiry was a collateral one, having a distinct and independent character, and received a final decision. The administration of the fund for the benefit of the bondholders may continue in the court for a long time to come, dividends being made from time to time in payment of coupons still unsatisfied. The case is a peculiar one, it is true; but under all the circumstances, we think that the proceeding may be regarded as so far independent as to make the decision substantially a final decree for the purposes of an appeal.

As to the point made by the appellants, that the complainant is only a creditor, seeking satisfaction of his debt, and cannot be regarded in the light of a trustee, and therefore is not entitled to an allowance for any expenses or counsel fees beyond

taxed costs as between party and party; a great deal may be said. In ordinary cases the position of the appellants may be correct. But in a case like the present, where the bill was filed not only in behalf of the complainant himself, but in behalf of the other bondholders having an equal interest in the fund; and where the bill sought to rescue that fund from waste and destruction arising from the neglect and misconduct of the trustees, and to bring it into court for administration according to the purposes of the trust: and where all this has been done; and done at great expense and trouble on the part of the complainant; and the other bondholders have come in and participated in the benefits resulting from his proceedings, — if the complainant is not a trustee, he has at least acted the part of a · trustee in relation to the common interest. He may be said to have saved the fund for the *cestuis que trust,* and to have secured its proper application to their use. There is no doubt, from the evidence, that, besides the bestowment of his time for years almost exclusively to the pursuit of this object, he has expended a large amount of money for which no allowance has been made, nor can properly be made. It would be very hard on him to turn him away without any allowance except the paltry sum which could be taxed under the fee-bill. It would not only be unjust to him, but it would give to the other parties entitled to participate in the benefits of the fund an unfair advantage. He has worked for them as well as for himself; and if he cannot be reimbursed out of the fund itself, they ought to contribute their due proportion of the expenses which he has fairly incurred. To make them a charge upon the fund is the most equitable way of securing such contribution. And such charge cannot be justly complained of by the trustees of the, internal improvement fund, because, however fair may have been the conduct of the present trustees, who were elected to their positions since the acts complained of were committed by their predecessors, those acts, as the event of the cause shows, furnished abundant ground for instituting the proceedings.

It is a general principle that a trust estate must bear the expenses of its administration. It is also established by sufficient authority, that where one of many parties having a com-

mon interest in a trust fund, at his own expense takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement, either out of the fund itself, or by proportional contribution from those who accept the benefit of his efforts. This has long been the rule in relation to proceedings for restoring property to the uses of a charity, which has been unjustly diverted therefrom. Thus, in *Attorney-General* v. *The Brewers' Company* (1 P. W. 376), Lord Chancellor Cowper allowed costs to the relators out of the improved rents which they received for the charity, "for that they had been serviceable to the charity, by easing them of the six hundred and twenty pounds debt which was claimed against them." In *Attorney-General* v. *Kerr* (4 Beav. 297), it is conceded to be the general rule that the relator in a charity information, upon obtaining a decree, is entitled to his costs as between solicitor and client. In that case they were not allowed out of the general charity estate, but were charged upon the particular property recovered.

The same rule was followed in *Attorney-General* v. *Old South Society*, 13 Allen (Mass.), 474.

Of course, it is well understood that costs as between solicitor and client include all reasonable expenses and counsel fees, and are not like costs as between party and party, confined to the taxed costs allowed by the fee-bill. This difference is pointed out in the case of *In re Paschal*, 10 Wall. 483, 493.

The same rule is applied to creditors' suits, where a fund has been realized by the diligence of the plaintiff. In England, where specialty creditors have a preference, a simple-contract creditor who recovers a fund for the general benefit is allowed his costs, as between party and party, out of the fund in preference to all other claims; and the balance of his costs, as between solicitor and client, are to be paid either out of the fund or *pro rata* by all the creditors who partake of the benefit of the suit. This was the judgment in *Stanton* v. *Hatfield*, 1 Keen, 358; followed in *Thompson* v. *Cooper*, 2 Col. C. C. 87. In the latter case Vice-Chancellor Knight Bruce said: "Having come in and proved, and obtained the benefit of the suit which was instituted on their behalf, as well

as that of the plaintiff, it cannot be just that in such a suit —
a suit instituted for the benefit of all the creditors — one
alone should bear the burden, when others have the benefit."
To the same purport are *Tootal* v. *Spicer*, 4 Sim. 510; *Larkins*
v. *Paxton*, 2 Myl. & K. 320; *Barker* v. *Wardle*, id. 818; *Sut-
ton* v. *Doggett*, 3 Beav. 9.

The rule that a party who recovers a fund for the common
benefit of creditors is entitled to have his costs and expenses
paid out of the fund, prevails in bankruptcy cases.  In *Worrall*
v. *Harford* (8 Ves. Jr. 4), Lord Eldon said : " The petitioning
creditor is answerable till the assignment.  Can there be a
doubt that the assignees, if there be nothing special in the
deed, would have a clear right to pay all the expenses in-
curred?  It would be implied if not expressed."  This rule
has been followed by the District Courts of the United States.
See a forcible opinion of Judge Bryan, *In re Williams* (2 Bank.
Reg. 28), in the District Court of South Carolina ; and *In the
Matter of O'Hara* (8 Law Reg. N. s. 113), in the western dis-
trict of Pennsylvania.  In a case in Massachusetts before Judge
Lowell the same rule was adopted.  The petitioning creditors
charged as an act of bankruptcy the execution of a mortgage
by the debtors, and having succeeded, after much opposition,
in substantiating the charge, they asked that counsel fees
should be allowed them out of the estate.  The remarks of
Judge Lowell are so apposite, and seem to us so well con-
sidered, that we quote from his opinion.  " A petition *in in-
vitum*," says he, " to have a debtor adjudged bankrupt is for
the benefit of all his unsecured creditors ; and a favorable
decree gives them all a proportionate advantage, and the court
has no power to order, as is often done in chancery, that this
advantage shall depend upon their contributing to the expenses
of the suit ; but any creditor may carry on the proceedings if
the petitioner should refuse to do so ; and after adjudication
all may prove their debts.  In this case the fund from which
the dividend will be paid is due entirely to the exertions of the
petitioners in setting aside the mortgage ; and, in most cases,
though not in this, no single creditor, nor any three or four of
of them, have a sufficient interest to enable them to undertake
the conduct of the proceedings without positive loss of money

if they cannot tax the expenses on the fund, for those expenses
will usually exceed the dividend on their debts. . . . The strong
equities of the petitioner's case are not difficult to discover;
and the practice under the act of 1841 was to allow such a
charge out of the assets, as I find by examining the records.
My doubt was of my power in the premises under the fee-bill
of 26th February, 1853 (10 Stat. 161), which does not appear to
sanction it, and does appear to be intended to cover the whole
ground of taxation of costs at law and in equity and admi-
ralty; and by the general orders, these petitions follow the rule
of cases in equity in all matters of costs. Upon reflection I
have concluded that the fee-bill is probably intended to reach
only taxable costs commonly so called, and may have its full
effect without being construed to take away the power of a
court of equity to permit counsel fees to be taxed in those
cases where a fund is in court upon or to which different par-
ties have distinct rights or claims. . . . I have been referred to
the record of a case in equity in the Circuit Court in which
Judge Sprague, since the passage of the fee-bill, ordered the
counsel fees of all parties to be paid out of the fund; and
Judge Kane adopted a like rule in *Ex parte Plitt*, 2 Wall. Jr.
453. These decisions, and those in bankruptcy already cited,
justify me in construing the statute in the way which the equi-
ties of the case so clearly demand."

The views here expressed with regard to the application of
the fee-bill to cases of this sort are undoubtedly correct. The
fee-bill is intended to regulate only those fees and costs which
are strictly chargeable as between party and party, and not to
regulate the fees of counsel and other expenses and charges as
between solicitor and client, nor the power of a court of equity,
in cases of administration of funds under its control, to make
such allowance to the parties out of the fund as justice and
equity may require. The fee-bill itself expressly provides that
it shall not be construed to prohibit attorneys, solicitors, and
proctors from charging to and receiving from their clients
(other than the government) such reasonable compensation for
their services, in addition to the taxable costs, as may be in ac-
cordance with general usage in their respective States, or may
be agreed upon between the parties. Act of Feb. 26, 1853, c. 80,

10 Stat. 161; Rev. Stat., sect. 823. And the act contains nothing which can be fairly construed to deprive the Court of Chancery of its long-established control over the costs and charges of the litigation, to be exercised as equity and justice may require, including proper allowances to those who have instituted proceedings for the benefit of a general fund.

This court, in the case of *Cowdrey* v. *Galveston, &c. Railroad Co.* (93 U. S. 352), sustained an allowance of $5,000 for counsel fees to be paid to counsel out of the proceeds of a railroad mortgage, foreclosed in the Circuit Court for the District of Texas, — being the amount agreed by the trustees to be paid for instituting proceedings which were discontinued by the intervention of the civil war. A new bill was afterwards filed by some of the bondholders, and the fund was brought into court, and the fee in question was directed to be paid by the receiver. We regarded the charge as a proper one to be paid out of the fund. Liberal allowances were also made by the Circuit Court in the same case for counsel fees and other charges incurred by the complainants in the cause, which were never brought to this court for review.

In the vast amount of litigation which has arisen in this country upon railroad mortgages, where various parties have intervened for the protection of their rights, and the fund has been subjected to the control of the court and placed in the hands of receivers or trustees, it has been the common practice, as well in the courts of the United States as in those of the States, to make fair and just allowances for expenses and counsel fees to the trustees, or other parties, promoting the litigation and securing the due application of the property to the trusts and charges to which it was subject. Sometimes, no doubt, these allowances have been excessive, and perhaps illegal; and we would be very far from expressing our approval of such large allowances to trustees, receivers, and counsel as have sometimes been made; and which have justly excited severe criticism.

Still, a just respect for the eminent judges under whose direction many of these cases have been administered would lead to the conclusion that allowances of this kind, if made with moderation and a jealous regard to the rights of those who are

interested in the fund, are not only admissible, but agreeable to the principles of equity and justice.

The subject of allowances to be made to trustees *eo nomine* is very fully examined in the books. An exhaustive citation of both English and American authorities is to be found in the notes to the case of *Robinson* v. *Pett*, 2 White & Tudor's Leading Cases in Equity, 238, American edition, pp. 512–600; and see Perry on Trusts, sects. 894, 910, 912.

It is unnecessary, however, to pursue the subject further. The conclusion to which we have come is that, under the circumstances of this case, the Circuit Court had the power, in its discretion, to allow to the complainant, Vose, his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, and in reclaiming and rescuing the trust fund and causing it to be subjected to the purposes of the trust. The allowances made for these purposes we have examined, and do not find anything therein seriously objectionable. The court below should have considerable latitude of discretion on the subject, since it has far better means of knowing what is just and reasonable than an appellate court can have. It is not shown in this case by the appellants that any of these allowances are excessive, or that the expenditures allowed were not fairly and honestly made.

But there is one class of allowances made by the court which we consider decidedly objectionable. We refer to those made for the personal services and private expenses of the complainant. In England and some of the States, no such allowance is made even to trustees *eo nomine*. In other States it is. But the complainant was not a trustee. He was a creditor, suing on behalf of himself and other creditors, for his and their own benefit and advantage. The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses. We can find no authority whatever for any such charge by a person in his situation. Where an allowance is made to trustees for their personal services, it is made with a view to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to

accept the office of trustee. These considerations have no application to the case of a creditor seeking his rights in a judicial proceeding. It would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of creditors, and that perhaps only to a small amount, if they could calculate upon the allowance of a salary for their time and of having all their private expenses paid. Such an allowance has neither reason nor authority for its support.

We are of opinion, therefore, that the allowance for these purposes was illegally made, and that to this extent the orders should be reversed. We refer to the allowance in the last order, of $15,003.35 for private expenses, and of $34,625 for personal services. As to those items the said last order will be reversed, and in all other respects both of the orders appealed from will be affirmed; and it is

*So ordered.*

MR. JUSTICE MILLER dissenting.

While I agree to the decree of the court in this case, I do not agree to the opinion, so far as it is an argument in favor of a principle on which is founded the grossest judicial abuse of the present day; namely, the absorption of a property or a fund which comes into the control of a court, by making allowances for attorneys' fees and other expenses, pending the litigation, payable out of the common fund, when it may be finally decided that the party who employed the attorney, or incurred the costs, never had any interest in the property or fund in litigation.

This system of paying from a man's property those engaged in the effort to wrest it from him can never receive my approval; and as I have had no opportunity to examine the authorities cited in the opinion, I can do no more than protest against the doctrine.