RALEIGH-DURHAM AIRPORT AUTHORITY v. LUCY A. JONES HOWARD, ADMINISTRATOR C.T.A. OF THE ESTATE OF MICHAEL C. JONES, NORMAN E. WILLIAMS, CHARLES E. DARSIE, JEFFREY P. JONES, AND BOYCE, MITCHELL, BURNS & SMITH, A PARTNERSHIP

No. 8710SC46

(Filed 22 December 1987)

1. **Attorneys at Law § 7.3— condemnation action—attorney fees—common fund doctrine**

    In a condemnation action by the Airport Authority in which attorney Boyce owned an interest in the property as compensation for legal services and in which Boyce defended the condemnation action, the trial court had the authority to award Boyce an attorney fee under the common fund doctrine where the condemnation award was under the trial court's supervision and control; Boyce's efforts clearly resulted in a substantial benefit to all of the defendants; the record strongly supports the trial judge's finding that Boyce did virtually all of the legal work which enriched all parties; the action was brought by the Airport Authority and not by Boyce, so that protection of the integrity of the judicial system from abuse by plaintiffs is not involved here; Boyce's interest in the fund tends to lessen the probability of vexatious and trifling litigation; and the common fund doctrine has been applied by the courts in cases in which the beneficiaries of the fund were adversaries. *Horner*

Raleigh-Durham Airport Authority v. Howard

*v. Chamber of Commerce*, 236 N.C. 96, resolved the question of whether the common fund doctrine should be extended to taxpayer suits and did not limit its application to suits brought by taxpayers.

**2. Attorneys at Law § 7.3— condemnation action—$100,000 attorney fee—supported by record**

A $100,000 attorney fee for the defense of a condemnation action was supported by the trial judge's findings of fact, the especially relevant portions of which took up to two full single-spaced pages in the Record on Appeal.

**3. Trial § 3.1— condemnation action—denial of motion for continuance—no abuse of discretion**

The trial court did not abuse its discretion by denying a motion for a continuance in a condemnation action where the motion was not supported by affidavit or by a forecast of expected testimony or evidence of any kind.

**4. Trial § 4— condemnation action—denial of default judgment—no error**

The trial court did not err in a condemnation action by denying a default judgment for one defendant against another where defendant Jeffrey Jones filed an answer to the Airport Authority's complaint in which he claimed a one-half interest in the property, denied any interest by Boyce, and later denoted his answer as a crossclaim and applied for a default judgment contending that Boyce had failed to respond. Jones' answer did not require a response because Boyce did not claim an individual interest in the property and the issue of the respective interests of the landowners was already before the court.

**5. Eminent Domain § 7.9— condemnation for airport expansion—jury trial denied —no error**

The trial court did not err by denying a defendant's motion for a jury trial on the issue of ownership of the property where the issue of ownership was not triable by a jury of right under N.C.G.S. § 40A-43 and N.C.G.S. § 40A-55, and defendant did not demand a jury trial in writing within the prescribed time.

**6. Rules of Civil Procedure § 15— condemnation action—motion to amend crossclaim denied—no error**

The trial court did not err in a condemnation action by denying defendant Jones' motion to amend his crossclaim, originally labeled answer, against another defendant where no responsive pleading was required after Jones filed his answer and he was thus not entitled to amend as a matter of course.

**7. Bills of Discovery § 1— motion for discovery after trial begun—denied—no error**

The trial judge in a condemnation action did not err by denying a defendant's motion for discovery made after appellees filed a motion to determine the interests of the landowners where the defendant had notice well in advance that the issue of ownership would be determined in the action. The trial judge is not required to permit discovery five years after the action was commenced, two months after other counsel was hired, and three days into the trial.

**8. Trusts § 11— disputed ownership interest in property—burden of proof**

In a condemnation action in which previous litigation had resulted in a consent judgment transferring ownership of a 50 percent interest in the property to "Eugene Boyce, Attorney and Trustee," the trial court did not err by placing the burden of proof on the trust beneficiary claiming the entire 50 percent interest in property where there were no business dealings of any kind between the trustee, Boyce, and the beneficiary; the beneficiary was seeking to abrogate Boyce's record title to the property which had been conveyed in a consent judgment; and the beneficiary was attacking the record title.

**9. Attorneys at Law § 7.3— condemnation action—attorney's interest in property as result of prior litigation**

In a condemnation action in which the attorney for defendants had received a 50 percent interest in the property as "Attorney and Trustee" in a consent judgment resulting from prior litigation, the trial judge did not err by awarding the attorney on behalf of his law firm a 25 percent interest in the property where all of the evidence either supported, or at worst did not refute, the attorney's claim that he was paid a 25 percent interest as compensation for his earlier legal services.

APPEAL by defendants from *Bailey, Judge*. Order regarding attorney fees entered 10 September 1986 and Judgment regarding property ownership entered 11 September 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 25 August 1987.

*W. Y. Manson for Lucy Jones Howard, and Samuel Roberti for Jeffrey P. Jones, defendant-appellants.*

*Womble, Carlyle, Sandridge, and Rice by William E. Moore, Jr., G. Eugene Boyce, and R. Daniel Boyce for G. Eugene Boyce as Trustee for Jeffrey P. Jones, for Norman E. Williams, for Charles E. Darsie, and for Boyce, Mitchell, Burns, and Smith, a partnership, defendant-appellees.*

BECTON, Judge.

Plaintiff, Raleigh-Durham Airport Authority, brought this action to condemn and appropriate property to which all of the named defendants claimed an interest. A jury determined that the property was worth $1,185,825. On motions filed by defendant appellees Norman Williams, Charles Darsie, Eugene Boyce and the law firm of Boyce, Mitchell, Burns and Smith, the trial judge determined the interests of the landowners *inter se*, and apportioned Mr. Boyce's attorney fees among all defendants. The

amount of the compensation award is not being contested on appeal; rather appellants Lucy Jones Howard and Jeffrey Jones assign several errors to the trial judge's distribution of the property and apportionment of attorney fees. We hold that the trial judge properly determined the interests of the landowners and properly apportioned the attorney fees.

I

In 1978, Freddy Jones owned property located near the Raleigh-Durham Airport. During that year, Freddy Jones was convicted of the murder of his brother, who was appellant Lucy Jones' husband. Lucy Jones, now Lucy Jones Howard, brought a wrongful death action against Freddy Jones. She was represented by attorneys Darsie and Williams. The law firm of Boyce, Mitchell, Burns and Smith (B M B & S, P.A.) by Attorney G. Eugene Boyce, represented Freddy Jones in the criminal and civil cases. A consent judgment was entered in the wrongful death action, awarding Lucy Jones Howard (Howard) a 50 percent interest in Freddy Jones' property. Her attorneys, Darsie and Williams, received a portion of Howard's award under a contingent fee arrangement. The consent judgment also awarded Boyce the remaining 50 percent interest as "Attorney and Trustee."

In August 1981, the Raleigh-Durham Airport Authority initiated a condemnation action against the property owners. During the next several years Boyce prepared to litigate the condemnation action. However, in February 1986, Freddy Jones unsuccessfully attempted to set aside the consent judgment, and Jeffrey Jones (Freddy Jones' son) claimed ownership of the 50% interest which Boyce held as "Attorney and Trustee." Boyce contended that one-half of the 50 percent was given to him as compensation for legal representation in the criminal and civil actions and that he held the other one-half in trust for Jeffrey Jones. After learning that Jeffrey Jones claimed ownership of the entire 50 percent interest, Boyce advised Lucy Howard and Jeffrey Jones by letter that he could not represent them in the condemnation proceeding because of the potential conflict of interest and advised them to retain separate counsel. Jeffrey Jones and Lucy Howard hired attorneys W. Y. Manson and Samuel Roberti to represent them in the condemnation action.

In August 1986, a jury awarded just compensation for the property. In September 1986, the trial judge determined the landowners' interests as follows:

| | |
|---|---|
| Lucy Jones Howard | 33.34% |
| Charles Darsie | 8.33% |
| Norman E. Williams | 8.33% |
| Eugene Boyce (as trustee for Jeffrey Jones) | 25.00% |
| Eugene Boyce (for B M B & S, P.A.) | 25.00% |

Upon determining that Freddy Jones had paid Boyce $45,000 in cash during the interim between the civil and criminal trials, the trial judge further found that Boyce held one-half of that sum in trust for Jeffrey Jones and that he, together with his law partners, owned the other one-half. Finally, the trial judge, acting on a motion by appellees, awarded B M B & S, P.A. a $100,000 attorney fee from the total proceeds of the condemnation award.

II

Appellants made nine assignments of error on appeal. We will address them below.

A

[1] Appellants first contend that the trial judge erred in awarding attorney fees to B M B & S, P.A. out of the total compensation award.

As a general rule, attorney fees are not awarded to the prevailing party without statutory authority. In the instant case, the trial judge based the award on the application of an exception to the general rule — the common fund doctrine. *See, e.g., Trustee v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1882); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 62 L.Ed. 2d 676 (1980); *Gibbs v. Blackwelder,* 346 F. 2d 943 (4th Cir. 1965); *Alpine Pharmacy, Inc. v. Chas. Phizer & Co.,* 481 F. 2d 1045 (2d Cir.), *cert. denied, Patlogan v. Dickstein, et al.,* 414 U.S. 1092, 38 L.Ed. 2d 549 (1973); *In re Air Crash Disaster at Florida Everglades,* 549 F. 2d 1006 (5th Cir. 1977). The doctrine allows "a court of equity, or a court in the exercise of equitable jurisdiction, [to] in its discretion, and without

statutory authorization, order an allowance for attorney fees to a litigant who at his own expense, has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund which others may share with him." *Horner v. Chamber of Commerce*, 236 N.C. 96, 98, 72 S.E. 2d 21, 22 (1952).

Appellants argue, however, that the North Carolina Supreme Court, in *Horner*, restricted the common fund doctrine in North Carolina, limiting its application in this state to suits brought by taxpayers to protect, preserve or increase a public fund. We disagree.

In *Horner*, plaintiff brought an action on behalf of the taxpayers of Burlington to have declared illegal payments of money made by the City of Burlington to the Burlington Chamber of Commerce. Plaintiff was successful in his suit, and the Chamber was ordered to refund the funds to the City. Plaintiff then petitioned the court for a reasonable attorneys fee, which the court denied.

On appeal, our Supreme Court reversed the decision of the trial court and remanded the case for an award of a reasonable fee. In its opinion, the Supreme Court stated the issue:

> Can the plaintiff in a taxpayers' action, who has recovered for the benefit of a municipality public moneys unlawfully disbursed and otherwise lost, be awarded from the amount recovered and restored to the municipality a reasonable sum to be used in paying the fees of his attorney, without a statute expressly so providing?

*Id.* at 97, 72 S.E. 2d at 22. In addressing this issue, the court *recognized* and *approved* the common fund theory. In stating the "well established" rule allowing an attorneys fee to a litigant who "has maintained a successful suit for the preservation, protection, or increase of a common fund," the *Horner* court used the term litigant, not taxpayer, and did not restrict the doctrine to "a successful *taxpayers* suit." Indeed, in specifically recognizing that the common fund doctrine had long been applied in non-taxpayers cases, the *Horner* court said:

> *The rule has been recognized and applied by this Court in various classes of cases*, most common among which are those involving allowances to pay fees for services furnished by attorneys to (1) next friends of infants or others under disability and (2) fiduciaries such as receivers, trustees, and those administering estates of decedents, respecting litigation involving either the creation or protection of the common fund or common property. (Citations omitted.)

*Horner* at 97-98, 72 S.E. 2d at 22 (emphasis added). This language clearly and unequivocally recognizes and approves the common fund doctrine.

The *Horner* court resolved the narrow question whether the rule should be *extended* to taxpayer suits. Citing cases from several other jurisdictions, the court stated:

> By what appears to be the decided weight of authority in other jurisdictions, *the doctrine of allowance of attorney fees against the property or fund created or protected by attorneys' services extends to and embraces taxpayers' actions like the instant case.*

*Id.* at 98, 72 S.E. 2d at 22 (emphasis added). After discussing several cases from other jurisdictions, the *Horner* court concluded:

> that where, as in the present case, on refusal of municipal authorities to act, a taxpayer successfully prosecutes an action to recover, and does actually recover and collect, funds of the municipality which had been expended wrongfully or misapplied, the court has implied power in the exercise of a sound discretion to make a reasonable allowance, from the funds actually recovered, to be used as compensation for the plaintiff taxpayer's attorney fees.

In extending the rule to include taxpayer actions, the *Horner* court determined that the *rule should be extended only to those taxpayer actions* "in which taxpayers not only recover judgment for the wrongfully expended public money, but actually collect the moneys, so misapplied," *id.* at 101, 72 S.E. 2d at 24, and *should not be extended to all taxpayer actions.*

In our view, the case *sub judice* is controlled by *Horner*. Appellants' reliance on this court's opinions in *Madden v. Chase*, 84

N.C. App. 289, 352 S.E. 2d 456, *disc. rev. denied,* 320 N.C. 169, 358 S.E. 2d 53 (1987) and *Kiddie Korner v. Board of Education,* 55 N.C. App. 134, 285 S.E. 2d 110 (1981) is misplaced and overlooks the *stare decisis* effect of *Horner.*

In the case *sub judice,* all of the ingredients for application of the common fund doctrine are present. The condemnation award was under the trial court's supervision and control. Boyce's efforts clearly resulted in a substantial benefit to all of the defendants. Although appellants take exception to the court's findings of fact regarding Boyce's role in mounting a defense to the condemnation action, the record strongly supports the trial judge's finding that Boyce "did virtually all of the legal work" which enriched all parties. Moreover, the overriding concern expressed in *Horner*—protecting the integrity of the judicial system from abuse by plaintiffs—is not implicated here. This action was brought by the Airport Authority, not by Boyce. Nor are we persuaded that the likelihood of abuse is increased by the attorney himself having had an interest in the fund. To the contrary, this fact tends to lessen the probability of "vexatious and trifling litigation" which was feared by the *Horner* court. Also, contrary to appellants' position, the doctrine has been applied by other courts in cases in which the beneficiaries of the fund were adversaries. *See, e.g., Wallace v. Fiske,* 80 F. 2d 897 (8th Cir. 1935) (on rehearing); *O'Hara v. Oakland County,* 136 F. 2d 152 (6th Cir. 1943); *Carnston v. Hardin,* 504 F. 2d 566 (2d Cir. 1974). *See generally* M. F. Derfner and Arthur D. Wolk, COURT AWARDED ATTORNEY FEES, Section 2 (1st Ed. 1986).

In light of appellees' cogent, equitable arguments and our Supreme Court's holding in *Horner,* we conclude that the trial court had the authority to award Attorney Boyce an attorney fee under the common fund doctrine.

B

[2] Appellants next assign error to the amount of the attorneys fee award. We summarily reject this assignment of error. Considering Judge Bailey's findings of fact, especially findings 3-8, which themselves take up two full single-spaced pages in the Record on Appeal, we conclude that the trial judge did not abuse his discretion in fixing the fee at $100,000.

C

All of appellants' seven remaining assignments of error relate to the trial judge's division of the property interests as between Jeffrey Jones and B M B & S, P.A.

[3] 1. Appellant Jeffrey Jones contends that the trial judge erred in denying his motion for a continuance. The party seeking a continuance bears the burden of showing sufficient grounds. *Shankle v. Shankle*, 289 N.C. 473, 223 S.E. 2d 380 (1976); *Webb v. James*, 46 N.C. App. 551, 265 S.E. 2d 642 (1980). In the case *sub judice*, Jones' motion was not supported by affidavit nor by a forecast of expected testimony or evidence of any kind. We find no abuse of discretion in the trial court's denial of the motion. This assignment is overruled.

[4] 2. Jeffrey Jones next contends that the trial judge erred in denying his motion for default judgment against Boyce. In April 1986, five years after commencement of the condemnation action, Jeffrey Jones filed an Answer to the Airport Authority's Complaint in which he claimed a one-half interest in the property and denied any interest by Boyce. Jones later, in open court, applied for a "Default Final," denoting his Answer as a cross-claim and contending that Boyce had failed to respond. However, Jones' "Answer" did not require a response. In his Answer Jones denied that Boyce held any interest individually. Boyce has not and does not now claim an individual interest in the property. Thus, the only issue raised by Jones' Answer—the respective interests of the landowners—was one already before the court through Judge Hight's 20 February 1986 ruling which preserved that issue for disposition at a later date. This assignment is overruled.

[5] 3. Jeffrey Jones next contends that the trial judge erred in denying his motion for a jury trial on the issue of ownership of the property. Rule 38(b) of the North Carolina Rules of Civil Procedure provides that any party may demand a trial by jury of any issue "triable by a jury of right," if the party demands so, in writing, not more than 10 days after service of the last pleading regarding that issue. Jones' efforts to satisfy the above criteria are rejected.

In the instant case, the issue of ownership was not "triable by a jury of right." N.C. Gen. Stat. Sec. 40A-43 (1984) which

controls special proceedings in condemnation of land for airports provides:

> *The judge,* upon motion and 10 days' notice by either the condemnor or the owner, shall, either in or out of session, *hear and determine any and all issues raised by the pleadings other than the issue of compensation, including but not limited to,* the condemnors' authority to take, questions of necessary and proper parties, *title to the land,* interest taken, and area taken. (Emphasis added.)

Moreover, N.C. Gen. Stat. Sec. 40A-55 (1984) states:

> If there are *adverse and conflicting claimants* to the deposition made into court by the condemnor *or the additional amount determined as just compensation,* on which the judgment is entered in said action, *the judge* may direct the full amount determined to be paid into said court by the condemnor and *may retain said cause for determination of who is entitled to said moneys.* The *judge may* by further order in the cause *direct to whom the same shall be paid* and may in its discretion order a reference to ascertain the facts on which such determination and order are to be made. (Emphasis added.)

In addition, Jones did not demand a trial by jury in writing within the prescribed time. This assignment is overruled.

[6]  4. Jeffrey Jones next contends that the trial judge erred in denying his motion to amend his "cross-claim" against Boyce. Jones argues that he should have been granted leave to amend under Rule 15 of the North Carolina Rules of Civil Procedure which provides that a party may amend its pleading once as a matter of course at any time before a responsive pleading is served, assuming a response is required. On the facts of this case, no responsive pleading was required after Jones filed his Answer. Thus, he was not entitled to amend as a matter of course. This assignment is overruled.

[7]  5. Jeffrey Jones next contends that the trial judge erred in denying his motion for discovery. He argues that discovery should have been allowed after appellees filed a motion to determine the interests of the landowners. Although the trial judge may grant motions for discovery during a trial, he should do so

only when the interests of justice so demand. Jones had notice well in advance that the issue of ownership would be determined in this action. The trial judge is not required to permit discovery five years after the action was commenced, two months after other counsel was hired, and three days into the trial. This assignment is overruled.

[8] 6. Jeffrey Jones next contends that the trial judge erred in placing the burden of proof on him regarding his claimed 50 percent interest in the property. The consent judgment transferred ownership of 50 percent interest to "Eugene Boyce, Attorney and Trustee." However, the judgment did not resolve how much of the ownership interest Boyce held as attorney and how much he held as trustee. The parties agree that Jeffrey Jones is the beneficiary of the interest held in trust. Jones argues that Boyce had the burden of proving the amount held in the trust. He argues, citing *McNeill v. McNeill*, 223 N.C. 178, 25 S.E. 2d 615 (1943), that a presumption of fraud arises when a trustee benefits from a transaction with a beneficiary and the burden of proof is on the trustee to show by the greater weight of the evidence that the transaction was open, fair and honest. Although Jeffrey Jones accurately states the presumption which applies to business dealings, involving trust property, between a trustee and beneficiary, that presumption does not apply in this case because there were no business dealings of any kind between Boyce and Jeffrey Jones. Rather, in the instant case, Jeffrey Jones sought to abrogate Boyce's record title to the property conveyed to Boyce in the consent judgment by Freddy Jones. (Freddy Jones' 1986 effort to set aside the 1978 consent judgment was unsuccessful.) Although Jeffrey Jones filed a separate lawsuit in 1986 alleging that Boyce mismanaged the trust, Jeffrey's claim in the case *sub judice* is that he, not Boyce owns the entire 50 percent interest in dispute. Jeffrey Jones first raised the issue of the division of the interest Boyce held at the 20 February 1986 hearing. Record title was held by Boyce. Jones was attacking the title, and he had the burden of proving his claim. A judge, not a jury, heard all the evidence and was convinced that Boyce held a 25 percent interest. This assignment of error is overruled.

[9] 7. Jones contends, finally, that the trial judge erred in awarding Boyce, on behalf of B M B & S, P.A. a 25 percent interest in the property. All of the evidence either supports, or at worst

does not refute, Boyce's claim that he was paid a 25 percent interest as compensation for his legal services to Freddy Jones. This assignment is without merit.

Affirmed.

Judges MARTIN and COZORT concur.