**OKLAHOMA TAX COMMISSION,**
Petitioner,

v.

**The Honorable Carolyn R. RICKS,**
**District Judge, Respondent.**

No. 83531.

Supreme Court of Oklahoma.

Oct. 25, 1994.

As Corrected Oct. 27, 1994.

---

David Hudson, Gen. Counsel, Stanley P. Johnston, Deputy Gen. Counsel, Robert B. Struble, Asst. Gen. Counsel, Okl. Tax Com'n, Oklahoma City, for petitioner.

James A. Jennings, III, Elizabeth J. Bradford, Holloway, Dobson, Hudson, Bachman, Alden, Jennings, Robertson & Holloway, Oklahoma City, for real parties in interest.

OPALA, Justice.

The dispositive issues tendered by this original proceeding are (1) whether a *"common fund"* was created in *Strelecki v. Oklahoma Tax Commission*[1] by taxpayers' protests before the taxing authority and on appeal (that enabled many other federal retirees to become eligible for state income tax refunds), from which an attorney's fee may be awarded in a district court action? and (2) whether the district court may exercise de-

---

1. Okl., 872 P.2d 910 (1993).

claratory judicature to affect post-*Strelecki* administrative refund orders of the Oklahoma Tax Commission? We answer both questions in the negative.

## I

## THE ANATOMY OF LITIGATION

In *Strelecki* this court *retroactively* applied a *new rule* of federal law first announced in *Davis v. Michigan Dept. of Treasury.*[2] *Davis* held infirm a Michigan statute that *exempted* from levy benefits from the state to its retired employees but taxed like payments from all other employers, including the federal government.[3] Following *Davis,* *Strelecki* declared invalid Oklahoma's similar (pre–1989) statutory income tax scheme insofar as it discriminated against federal retirees' tax liability. The cause was remanded to the Oklahoma Tax Commission [OTC] with directions to allow the six affected taxpayers' timely refund claims. By its rehearing clarification order, this court made the statutory refund remedy "available to all similarly situated taxpayers" and directed the OTC "to proceed to process the refund claims submitted by similarly situated taxpayers."[4] On remand the OTC entered administrative refund orders and began processing timely-filed claims for issuance of refund checks to the affected federal retirees.

The *Strelecki* plaintiffs [or taxpayers] (who were successful in their refund quest on appeal) brought an action in the district court for declaratory and injunctive relief. The suit presses for recognition *their* right to an attorney's fee from a common fund (which they urge was created through their efforts before the OTC and later on appeal in *Strelecki*) as benefactors of a large class of non-party federal retiree-taxpayers.[5] The respondent-judge issued a temporary order by which she restrained the OTC from paying out to the respective claimants any interest earned on refunds then due them.

In this original action the OTC seeks to prohibit the respondent-judge from proceeding further in the taxpayers' declaratory judgment suit. The taxing authority argues its *cognizance* to determine *all* matters relating to the taxpayers' refund claims (including the interest on the refunds) *is exclusive.* A declaratory judgment will not lie, the OTC adds, to construe its administrative orders or to declare rights in these agency decisions. Any claim the taxpayers may have had to attorney's fees, the OTC urges, should have been pressed in the agency proceedings or on direct appeal. According to the OTC, there

---

**2.** 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

**3.** *Strelecki, supra* note 1 at 912.

**4.** On rehearing the OTC sought clarification of whether *Strelecki* determined "the rights and remedies of the parties to the appeal or of all taxpayers who, on or before April 15, 1989, filed claims for refund of income taxes voluntarily paid on their civil service or military income for the 1985 and/or subsequent tax years." *Id.* at 923. The pertinent portions of the clarification order, *Strelecki, supra* note 1 at 924, are:
"* * * [T]he refund provisions of [68 O.S. 1991] § 2373 provide a remedy for the six taxpayers who are parties hereto and to any other taxpayer who reported and paid income taxes on federal civil service and military retirement income for the 1985 tax year and gave notice of the overpayment and claim for refund before the expiration of three years from the report date for the 1985 tax year or three years from April 15, 1986; for the 1986 tax year if the notice of claim was submitted on or before April 15, 1990; and for the 1987 tax year if the notice of claim was submitted on or before April 15, 1991. * * * Because we have determined that the *refund remedy provided in § 2373 is available to all similarly situated taxpayers, the OTC is directed to proceed to process the refund claims submitted by similarly situated taxpayers* and determine the timeliness of the notices of claim and mathematical correctness of the claimed overpayments. * * *" (Emphasis added.)

**5.** In the case below the taxpayers ,seek a judgment declaring that (a) a common fund was created, which consists of the entire amount of all tax refunds (and interest) to which federal-retiree taxpayers were or would be entitled; (b) the *Strelecki* plaintiffs are entitled to be paid an attorney's fee of 15% of the total amount of the common fund; and (c) the OTC should be enjoined from paying out all of the yet unpaid interest due federal retiree-taxpayers on their refund claims.

can be no "common fund" where the "benefits" of the proceeding are not to be shared in common, but must go directly to each individual.

The taxpayers counter that because only a court having equity cognizance is authorized to determine the legal existence of a common fund, no quest for an attorney's fee could have been made in agency proceedings or on appeal. Moreover, until *Strelecki* became final, the taxpayers explain, no common fund had in fact been created. A declaratory judgment action, they urge, is appropriate to determine the existence of a common fund and the amount of their claim to an attorney's fee due from that fund. By order issued earlier in the instant case this court *declared unenforceable* the respondent-judge's temporary restraining *order* (by which she directed that the OTC withhold certain amounts from refund checks to be issued), holding that order facially void for want of notice to the individual taxpayer-claimants (non-party federal retirees) whose refunds were sought to be adversely affected. Based on the reasons stated in Parts III and IV, *infra*, we now assume original jurisdiction to prohibit the respondent-judge from proceeding further in the action below.

**6.** State ex rel. Poulos v. State Bd. of Equal., Okl., 646 P.2d 1269, 1274–1275 (1982); *City Nat. Bank & Trust Co. v. Owens*, Okl., 565 P.2d 4, 7 (1977).

**7.** *Warren v. Century Bankcorporation, Inc.*, Okl., 741 P.2d 846, 853 (1987); *Burk v. Oklahoma City*, Okl., 522 P.2d 612, 622 (1974).

**8.** For scholarly discussions of the common fund doctrine see JOHN P. DAWSON, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 HARV.L.REV. 1597 (1974); JOHN P. DAWSON, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 HARV L.REV. 849 (1975).

**9.** *See Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157, 1162 (1881); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 124–125, 5 S.Ct. 387, 391, 28 L.Ed. 915, 918 (1885); *Harrison v. Perea*, 168 U.S. 311, 325, 18 S.Ct. 129, 134–135, 42 L.Ed. 478, 483 (1897); *United States*

## II

### THE COMMON–FUND DOCTRINE

■ As a general rule attorney's fees are not recoverable absent some statutory authority or an enforceable contract.[6] The common-fund (or equitable-fund) doctrine affords a recognized exception to this rule. When an individual's efforts succeed in creating or preserving a fund which benefits similarly situated non-litigants, equity powers may be invoked to charge that fund with attorney's fees for legal services rendered in its creation or preservation.[7] The doctrine is rooted in historic equity jurisdiction,[8] but owes its sudden appearance in this country to U.S. Supreme Court jurisprudence of the last century.[9] Oklahoma case law has long recognized the doctrine.[10]

## III

### EQUITY JURISPRUDENCE CANNOT EXTEND ITS COMMON–FUND DOCTRINE TO THIS CASE

■ The majority rule in state and federal courts is that, *before a money pool* may be subjected to a common-fund attorney's-fee

*v. Equitable Trust Co. of New York*, 283 U.S. 738, 744, 51 S.Ct. 639, 641, 75 L.Ed. 1379, 1384 (1931); *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184, 1187 (1939); *Mills v. Electric Auto–Lite Company*, 396 U.S. 375, 392, 90 S.Ct. 616, 625–626, 24 L.Ed.2d 593, 606 (1970); *Hall v. Cole*, 412 U.S. 1, 8, 93 S.Ct. 1943, 1948, 36 L.Ed.2d 702, 709 (1973); *cf. Hobbs v. McLean*, 117 U.S. 567, 582, 6 S.Ct. 870, 877, 29 L.Ed. 940, 946 (1886); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257, 269, 95 S.Ct. 1612, 1621–1622, 1627, 44 L.Ed.2d 141, 153–159 (1975).

**10.** *Warren, supra* note 7 at 853; *Burk, supra* note 7 at 622; *Fisher v. Superior Oil Co. of California*, Okl., 390 P.2d 521, 523 (1964); *Kellough v. Taylor*, 189 Okl. 675, 119 P.2d 556, 557–558 (1941); *Fitzgerald v. Bass*, 122 Okl. 140, 252 P. 54, 55 (1927); *Colley v. Sapp*, 44 Okl. 16, 142 P. 1193, 1194 (1914); *cf. Poulos, supra* note 6 at 1274–75; *State v. Oklahoma Tax Commission*, 194 Okl. 359, 151 P.2d 797, 798 (1944).

assessment, the *created or preserved fund* [11] must be brought under the *direct supervision and control of the court.* [12] Examples of fund creation/preservation are afforded by (a) the construction/administration of a trust estate, [13] (b) the existence of a judgment, [14] (c) an effect upon real property, [15] and (d) court-ordered fund segregation. [16] The claimant-beneficiary is not entitled to a counsel-fee award merely by bestowing a benefit on others. [17] The fund *must be* within the reach of the court at the time attorney's fees are sought, [18] and the court must have at least constructive custody or control over the money pool within the meaning of this rule; [19] the *sine qua non of control* is the court's *present authority* to assess an attorney's fee proportionately and accurately from each beneficiary's traceable portion [20] of a distinct pool of funds. [21]

The conceptual underpinnings for the chancery common-fund doctrine teach us that an equitable charge may be impressed in favor of its creator [22] *when the fund is within the direct control of the court.* [23] The "pre-

---

**11.** *Poulos, supra* note 6 at 1275; *Kellough, supra* note 10 at 557–58; *Baksinski v. Northwestern University*, 231 Ill.App.3d 7, 172 Ill.Dec. 436, 441, 595 N.E.2d 1106, 1111 (1992); *Private Truck Council of America v. State*, 128 N.H. 466, 517 A.2d 1150, 1157 (1986); *Fitzgerald v. City of Philadelphia*, 87 Pa.Cmwlth. 482, 487 A.2d 485, 489 (1985); *Akron–Canton v. Ohio Dept. of Admin. Serv.*, 21 Ohio App.3d 6, 486 N.E.2d 116, 118–119 (1984); *Van Emmerick v. Montana Dakota Utilities Co.*, 332 N.W.2d 279, 282–283 (S.D. 1983); *Penn Mutual Life Insurance Company v. Finkel*, 428 Pa. 11, 235 A.2d 396, 401 (1967); *Ayman v. Teachers' Retirement Board of City of N.Y.*, 30 Misc.2d 828, 215 N.Y.S.2d 933, 936 (1961). *See also* Dan B. Dobbs, Remedies 200 (1973).

**12.** *Dennis v. State*, 234 Neb. 427, 451 N.W.2d 676, 687 (1990) (overruled on other grounds, *Dennis v. Higgins*, 498 U.S. 439, 447–451, 111 S.Ct. 865, 870–872, 112 L.Ed.2d 969, 978–980 (1991)); *Hamer v. Kirk*, 64 Ill.2d 434, 1 Ill.Dec. 336, 339, 356 N.E.2d 524, 527 (1976); *Von Holt v. Izumo Taisha Kyo Mission of Hawaii*, 44 Ha. 147, 355 P.2d 40, 43 (1960), *aff'd on rehearing*, 44 Ha. 365, 355 P.2d 44 (1960); *Grandle v. Rhodes*, 107 Ohio App. 558, 154 N.E.2d 172, 173 (1958); *Eckford v. Borough of Atlanta*, 173 Ga. 650, 160 S.E. 773, 775 (1931); *Milster v. City Council*, 68 S.C. 243, 47 S.E. 141, 142 (1904); *see also Underwood v. Pierce*, 547 F.Supp. 256, 259 (C.D.Cal.1982); *Townsend v. Edelman*, 518 F.2d 116, 123 (7th Cir.1975); *Satoskar v. Indiana Real Estate Commission*, 517 F.2d 696, 698 (7th Cir.1975), *cert. denied*, 423 U.S. 928, 96 S.Ct. 276, 46 L.Ed.2d 256 (1975); *cf. Poulos, supra* note 6 at 1274–75 (in an original proceeding to challenge the constitutionality of an ad valorem property taxation scheme, we denied the petitioner's request for a counsel-fee award, stating that there was "no creation of a common fund as a result of the litigation" and none was present *"under the control* of this Court out of which we could order attorney's fees to be paid"). (Emphasis added.)

**13.** *Sprague, supra* note 9, 307 U.S. at 162, 59 S.Ct. at 778 (private trust estate); *Equitable Trust, supra* note 9, 283 U.S. at 739, 51 S.Ct. at 640 (trust estate of an incompetent); *Harrison, supra* note 9, 168 U.S. at 312, 18 S.Ct. at 129 (action to compel accounting of estate administrator); *Greenough, supra* note 9, 105 U.S. at 527, 26 L.Ed. at 1157 (administration of a public trust).

**14.** *City of Ozark v. Trawick*, 604 So.2d 360, 364 (Ala.1992).

**15.** *Raleigh–Durham Airport Auth. v. Howard*, 88 N.C.App. 207, 363 S.E.2d 184, 187 (1987).

**16.** *Flynn v. Kucharski*, 16 Ill.App.3d 624, 306 N.E.2d 726, 731 (1973).

**17.** *Hamer, supra* note 12, 1 Ill.Dec. at 339, 356 N.E.2d at 527.

**18.** *Underwood, supra* note 12 at 259.

**19.** *Flynn, supra* note 16, 306 N.E.2d at 731; *Von Holt, supra* note 12, 355 P.2d at 43; *Milster, supra* note 12, 47 S.E. at 141–142.

**20.** *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1123 (9th Cir.1981); *District of Columbia v. Green*, 381 A.2d 578, 582 (D.C.App. 1977); *City of East Peoria v. Tazewell County*, 17 Ill.App.3d 943, 308 N.E.2d 824, 826 (1974); *Rosemont Bldg Sup., Inc. v. Illinois Hwy. Trust Auth.*, 51 Ill.2d 126, 281 N.E.2d 338, 340 (1972); *Hoffman v. Lehnhausen*, 48 Ill.2d 323, 269 N.E.2d 465, 469 (1971).

**21.** *Townsend, supra* note 12 at 123.

**22.** *Pettus, supra* note 9, 113 U.S. at 124–125, 5 S.Ct. at 391 (citing *Greenough, supra* note 9).

**23.** The requirement calling for the court's present *control* over the fund to be charged serves a function somewhat similar to that performed by *possession* when the lien right is dependent on that element. A lien is a *charge* upon specific property. 42 O.S.1991 § 1; *Williamson v. Win-*

existing fund"[24] must be immediately subject to counsel-fee assessment,[25] and the benefits conferred have to be traceable with some accuracy to each beneficiary.[26] Because a state treasury is in no sense under the custody or control of the district court,[27] any action by that court which would precipitate a flow of monies from the state treasury cannot be deemed one to "create, preserve or protect" a fund.[28] Where a final order merely increases the taxing authority's liability, no segregable fund results from which attorney's fees may be awarded.[29] Neither are indirect savings to overtaxed beneficiaries a fit ground for impressing a common-fund counsel-fee award.[30] In the exercise of its equitable powers invocable for impression of a common-fund charge, a court's *in personam* jurisdiction may not be enlarged to reach non-party tax refund claimants.[31] A few decided cases, representing a *minority view,* dispense with or relax the otherwise rigid requirement of *present court control.*[32] We choose not to follow the course taken by those decisions.

The real impact of taxpayers' quest for declaratory judgment would *divert* monies from the ordinary course of the OTC's disbursement process. We are aware of no authority that would allow the district court to interrupt a lawful OTC tax collection/disbursement procedure to rechannel state money by applying it towards the satisfaction of attorney's fees.[33] The money to be used for refunds comprises an *unsegregated portion* of the state *fisc* which was *never brought before the district court for its direct supervision and control.*[34] Even assuming that a fund was created through the *Strelecki* litigation, the absence of *direct and present district court control* over monies subject to the OTC's authority would make inappropriate the allowance of a common-fund counsel-fee award.[35]

Moreover, if the respondent-judge were to entertain the taxpayers' action below, she would be called upon to declare rights in a large number of OTC refund claims—separate and distinct from those of the *Strelecki* plaintiffs—which are *not before the district court.* Such action by her clearly would constitute an unauthorized use of judicial force over non-parties' refund claims by charging money, immediately to be disbursed

ningham, 199 Okl. 393, 186 P.2d 644, 650 (1947). If the lien depends on possession, the claimant's lack of, or voluntary relinquishment of, possession will either *prevent the lien from attaching* or result in its destruction. 42 O.S. 1991 § 25; *Williamson, supra,* 186 P.2d at 650.

24. *Fitzgerald, supra* note 11 at 489. By "pre-existing" is meant that the fund is *in esse* when the plea for counsel-fee award is heard.

25. *Dennis, supra* note 12 at 687; *United Nursing Homes v. McNutt,* 35 Wash.App. 632, 669 P.2d 476, 483 (1983); *Seattle Sch. Dist. 1 of King Cty. v. State,* 90 Wash.2d 476, 585 P.2d 71, 1108 (1978).

26. *Alyeska, supra* note 9, 421 U.S. at 265 n. 39, 95 S.Ct. at 1625; *Satoskar, supra* note 12 at 698.

27. *Southern v. Beeler,* 183 Tenn. 272, 195 S.W.2d 857, 872 (1946).

28. *Seven Hills v. Cleveland,* 47 Ohio App.3d 159, 547 N.E.2d 1024, 1029 (1988); *Seattle Sch. Dist., supra* note 25, 585 P.2d at 108.

29. *Ayman, supra* note 11, 215 N.Y.S.2d at 936.

30. *Hamer, supra* note 12 at 527.

31. *See in this connection* the principles explained in *Passtou v. Spring Valley Center,* 501 A.2d 8, 14 (D.C.App.1985); *Dawson, supra* note 8, 88 Harv. L.Rev. at 919, where it is stated that to enlarge personal jurisdiction in the context of a common fund "would enable the successful lawyers not merely to solicit but to conscript clients."

32. *Powell v. Henry,* 267 Ark. 484, 592 S.W.2d 107, 109 (1980); *Horner v. Chamber of Commerce,* 236 N.C. 96, 72 S.E.2d 21, 24 (1952); *Shillito v. City of Spartanburg,* 214 S.C. 11, 51 S.E.2d 95, 104 (1948); *Fox v. Lantrip,* 169 Ky. 759, 185 S.W. 136, 139 (1916).

33. *East Peoria, supra,* note 20, 308 N.E.2d at 826; *Hoffman, supra,* note 20, 269 N.E.2d at 469.

34. *Ayman, supra* note 11, 215 N.Y.S.2d at 934.

35. *Rosemont, supra* note 20 281 N.E.2d at 340; *Green, supra* note 20 at 582; *Hoffman, supra* note 20 269 N.E.2d at 469.

to absent owner-recipients, with adverse counsel-fee assessment.[36]

## IV

## THE TERMS OF 12 O.S.1991 § 1657[37] OPERATE TO BAR THE DISTRICT COURT FROM AFFECTING THE RIGHTS OF PARTIES OR PRIVIES IN, AND STRANGERS TO, AN OTC ORDER

■ While the district court has broad declaratory powers,[38] it is clearly barred by the remedial boundary of 12 O.S.1991 § 1657[39] from entertaining suits to declare rights in an agency decision.[40] In short, administrative orders lie *dehors* the reach of the district court's declaratory judicature.[41]

The OTC refund procedure—which the plaintiffs below seek *to modify*—was implemented by *administrative orders* issued upon remand in *Strelecki.* The district court stands legislatively divested of remedial power to affect *any* Commission order by judicature that would create *added or different* rights for either refund claimants or for strangers to that agency's administrative process.

## CONCLUSION

■ Prohibition is a prerogative writ to be granted in the exercise of this court's supervisory control over inferior courts.[42] The respondent-judge *is powerless* to declare rights in a fund *not then before the district court.* Her actions in this respect constitute an unauthorized use of judicial force.[43] The district court *may not* invoke its chancery powers to assess an attorney's fee to be paid from a *corpus* over which it has neither present nor direct supervision or control. Because the OTC refund monies were never placed before the respondent-judge, they cannot provide a fitting source for the impression of a common-fund-style counsel-fee award. Moreover, the district court's power to grant declaratory relief may not be exercised through judicature that would use any part of overpaid tax liability (to be refunded by the OTC) as a pool of money available for a common-fund counsel-fee award.

ORIGINAL JURISDICTION ASSUMED; WRIT GRANTED.

All JUSTICES concur.

**36.** *Passtou, supra* note 31 at 14.

**37.** The terms of 12 O.S.1991 § 1657 are:
"This act shall not be applicable to *orders,* judgments, or decrees made by the State Industrial Court, the Corporation Commission, *or any other administrative agency, board or commission of the State of Oklahoma."* (Emphasis added.)

**38.** The terms of 12 O.S.1991 § 1651 provide in pertinent part:
"District courts may, in cases of actual controversy, determine *rights,* status, or other legal relations ... whether or not other legal relief is or could be claimed...." (Emphasis added.)

**39.** For the pertinent terms of 12 O.S.1991 § 1657, see *supra* note 37.

**40.** *Lincoln Bank and Trust Company v. Oklahoma Tax Commission,* Okl., 827 P.2d 1314, 1318 (1992); *Walters v. Oklahoma Ethics Commission,* Okl., 746 P.2d 172, 178 (1987); *Tulsa Tribune Co. v. Oklahoma Horse Racing Com'n,* Okl., 735 P.2d 548, 553 (1986); *Chancellor v. Tenneco Oil Co.,* Okl., 653 P.2d 204, 207 (1982); *Board of County Commissioners v. City of Norman,* Okl., 472 P.2d 910, 914 (1970).

**41.** As we view the § 1657 bar, it charts a *remedial boundary line* for the outer reach of the district court's declaratory relief. *See, e.g., Board of Law Library Trustees v. State,* Okl., 825 P.2d 1285, 1288 n. 11 (1992); *see Wilson v. Kane,* Okl., 852 P.2d 717, 721 (1993), for an analysis of inter-docket remedial boundaries' impact on probate procedure.

**42.** Art 7, § 4, Okl. Const.; *Marsh v. District Court In and For Muskogee,* Okl., 579 P.2d 832, 834 (1978); *Rey v. Means, In and For Tulsa Cty.,* Okl., 575 P.2d 116, 118 (1978).

**43.** Prohibition will lie to arrest unauthorized or excessive use of judicial force. *See Lee v. Hester,* Okl., 642 P.2d 243, 246 (1983); *Moses v. Hoebel,* Okl., 646 P.2d 601, 603 (1982); *State v. Evans,* Okl., 319 P.2d 1112, 1116 (1957).